749 P.2d 921

**John GOGLIA, Plaintiff-Appellee,**

v.

**Thomas BODNAR, M.D., Defendant-Appellant.**

**No. 1 CA–CIV 9170.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 1, 1987.

Reconsideration Denied Oct. 23, 1987.

Review Denied Feb. 23, 1988.

William J. Monahan, P.C. by William J. Monahan, Harris & Peacock by Donald W. Harris and Paul G. Ulrich, P.C. by Paul G. Ulrich, Phoenix, for plaintiff-appellee.

Teilborg, Sanders & Parks, P.C. by S. Paul Forrest, James W. Kaucher, Phoenix, for defendant-appellant.

## OPINION

SHELLEY, Presiding Judge.

This is an appeal from several superior court orders denying a defendant doctor's motions to vacate a default judgment in a medical malpractice case. It is necessary to set forth the somewhat involved procedural history of this litigation in order to properly address the issues raised on appeal.

### PROCEDURAL HISTORY

John Goglia incurred serious leg fractures and other related injuries as the result of a 1982 motorcycle accident. Goglia was taken to Boswell Memorial Hospital and treated for his injuries by an emergency room physician who consulted with Thomas Bodnar, M.D., an orthopedic surgeon.

Goglia filed a complaint against Sun Health Corporation, Walter O. Boswell Memorial Hospital, Inc., dba Boswell Memorial Hospital (Boswell), Dr. Bodnar and various fictitious corporations. The complaint alleged in part that Dr. Bodnar had failed to treat Goglia's 1982 injuries in a timely fashion and that as a result Goglia's leg became severely infected, resulting in permanent injuries.

Dr. Bodnar did not file a timely answer to Goglia's complaint. An affidavit on default and entry of default as to Bodnar were filed on January 10, 1985. A notice of default damages hearing was filed and an evidentiary hearing was held before a court commissioner. The commissioner entered a default judgment for $702,000.00 against Bodnar on March 11, 1985. Sun Health Corporation and Boswell were later dismissed from the litigation pursuant to stipulation.

Dr. Bodnar filed an answer to the complaint on March 5, 1985 and on March 8, 1985 he filed a motion to set aside default or default judgment. Attached to the motion was an affidavit of Dr. Bodnar explaining his actions as follows.

After receiving the summons and complaint on December 11, 1984, Dr. Bodnar sent them to Cigna Health Plan's legal department because he believed that Goglia was covered by Cigna and that Cigna would afford Bodnar coverage. Shortly after January 2, 1985, Cigna advised Bodnar that Goglia was not a Cigna patient and returned the complaint to Bodnar. Dr. Bodnar incorrectly believed that as a result of this delay he was in default and that nothing could be done to relieve him of the default. Therefore, on or about January 11, 1985, he "undertook to write a letter" to Goglia's attorney explaining his involvement in the case, advising that he had little to do with Goglia's care, and requesting relief. However, during an informal conversation with his corporate attorney, Bodnar was advised not to send such a letter and therefore did not do so.

Dr. Bodnar's affidavit states that between January 11, 1985 and March 1, 1985, he attempted to obtain medical records, determine his involvement in the case, and speak with the emergency room physician. On March 1, 1985, he took the summons and complaint along with other materials to Mutual Insurance Company of Arizona (MICA), his private medical malpractice liability insurance carrier.

The affidavit of Stephen Paul Forrest, Esq., one of Dr. Bodnar's litigation attorneys, was also attached to the motion to set aside the default. Mr. Forrest's affidavit states that MICA was first notified of any potential involvement of Dr. Bodnar in a lawsuit on March 1, 1985. Mr. Forrest asserted that he was advised to undertake the defense of Dr. Bodnar on March 4, 1985. The affidavit does not state by whom Mr. Forrest was advised to undertake the case.

On March 18, 1985, MICA filed a "Motion to Intervene for Limited Purpose" through separate counsel. MICA's motion

sought "leave to intervene not as a named party but for the limited purpose of providing additional information in support of the motion to set aside default or alternatively default judgment filed on behalf of its insured, Thomas Bodnar, M.D." The memorandum of points and authorities supporting MICA's motion asserted that Dr. Bodnar had admitted his failure to provide MICA with notice of the summons and complaint until approximately 2½ months after he had been served. MICA alleges that his untimely notice violated a provision of his insurance policy. MICA's memorandum thereafter asserted,

If a default which has been entered against Dr. Bodnar is not set aside, Dr. Bodnar will be without insurance coverage from MICA because he failed to comply with the notice provision to the substantial prejudice of MICA. On the other hand, if this Court sets aside the default thus relieving MICA from the prejudice resulting from Dr. Bodnar's failure to provide notice, MICA intends to provide coverage pursuant to the terms and conditions of his policy. *MICA joins in the motion to set aside default or alternatively default judgment, filed March 8, 1985,* and asks the Court to grant the relief request by Dr. Bodnar so that this matter may proceed on its merits. (Emphasis added.)

MICA's motion to intervene was opposed by Goglia. During the hearing on that motion, MICA attempted to limit its involvement in the lawsuit and expressed concern that if it became a named party, and if the default were set aside, the issue of insurance would reach the jury. Judge Linda K. Scott ruled that the motion to intervene would be granted and that MICA would be named as an intervenor. Judge Scott held that because Dr. Bodnar was already represented, MICA would not be permitted to participate on his behalf. She stated that it would be premature to determine if MICA would remain as a party should the default be set aside and noted that MICA might later file a motion for dismissal or stipulation removing it as a party.

Dr. Bodnar's motion to set aside the default judgment was heard on April 22, 1985. The written motion was based on Rule 60(c)(1), Arizona Rules of Civil Procedure, and urged that Dr. Bodnar's actions constituted excusable neglect. During the hearing Dr. Bodnar also cited Rule 60(c)(6) as a basis for relief from the default judgment. In so doing he argued that the default must be set aside in order to protect MICA's interests. MICA's counsel did not participate in the argument.

Judge Scott found that Dr. Bodnar had presented evidence of a meritorious defense and had made a prompt application for relief, but that his failure to take any action with respect to the complaint between January 2, 1985 and March 1, 1985 was inexcusable. Accordingly, the trial court denied Dr. Bodnar's motion to set aside default judgment on May 14, 1985 by minute entry order. The order states that Dr. Bodnar's motion was based only on Rule 60(c)(1) and that the court considered only this portion of the rule.

Dr. Bodnar filed a notice of appeal from the formal written order which had been entered on June 4, 1985. This court dismissed the appeal on December 16, 1985 on grounds that the order was not appealable because parties remained in the litigation and the judgment did not contain Rule 54(b) findings.

During the pendency of the appeal, Goglia filed an amended complaint naming Dr. Bodnar, Maricopa Orthopedic Associates, P.C., (Maricopa), his professional corporation, and Cigna as defendants. The complaint does not purport to state a claim against Dr. Bodnar as such. Paragraph 11 alleges:

"That on or about March 8, 1985, this honorable Court granted plaintiff, after a damages hearing, a $702,000.00 default judgment as to defendant Bodnar on the original complaint filed herein. That said default is a judicial admission of medical malpractice alleged in the original complaint and realleged herein for all acts the defendant Maricopa Orthopaedics [sic] Associates, P.C."

The prayer of the complaint seeks judgment against all defendants except Thomas

Bodnar, M.D. for the reasons stated in Paragraph 11.

Dr. Bodnar and Maricopa, both appearing through the same attorney, filed an answer to Goglia's amended complaint. On behalf of both Dr. Bodnar and Maricopa the attorney thereafter noticed and participated in several depositions.

Dr. Bodnar again moved to dismiss, reconsider, and vacate the previously entered default judgment, adding as grounds for relief the contention that the amended complaint had opened up the default. Goglia filed a response and the motion was argued to Judge Joseph D. Howe. However, Judge Howe did not rule on the motion because he concluded that the then pending appeal had ended the superior court's jurisdiction over these issues.

Following this court's dismissal of his appeal, Dr. Bodnar filed a "Motion to Vacate Default Judgment and Request for Setting of Oral Argument on Previous Motions." This motion asked the superior court to: (1) reconsider its decision refusing to set aside the default judgment entered against him in March 1985 (referring to the formal order entered by Judge Scott on June 4, 1985); (2) vacate the default judgment on the grounds set forth in his previous motion (which had not been ruled on by Judge Howe because of the pending appeal); (3) rule that Goglia had waived the default by allowing Dr. Bodnar to defend on the merits; (4) vacate the default judgment because it was interlineated; and (5) vacate the default judgment because, viewing the case in its entirety, allowing the default to stand would be unjust.

MICA filed a one-page "Joinder in Dr. Bodnar's Motion to Set Aside Default Judgment." The joinder did not assert any independent argument or interest on MICA's behalf. Rather, it adopted and incorporated by reference the memoranda and exhibits filed by Dr. Bodnar in support of his motion. The denial of coverage if the default and default judgment were not vacated was never withdrawn by MICA.

Judge Howe entered a minute order granting Dr. Bodnar's motion for reconsid-

eration, denying the joint motion of Dr. Bodnar and MICA to vacate default judgment, and granting Goglia's cross-motions to strike Dr. Bodnar's answers to the amended complaint and to substitute a non-interlineated judgment form. A formal order containing Rule 54(b) findings was entered on July 21, 1986. MICA did not appeal.

Dr. Bodnar filed a notice of appeal to this court and raised the following issues on appeal: (1) whether the trial court abused its discretion in failing to set aside the default judgment based on Rule 60(c)(6), and *Union Oil Company of California v. Hudson Oil Co.*, 131 Ariz. 285, 640 P.2d 847 (1982); (2) whether Goglia's amended complaint vacated the default judgment; (3) whether Goglia waived the default by allowing Dr. Bodnar to file an answer and participate in discovery; (4) whether the trial court erred in finding that Dr. Bodnar's neglect was inexcusable; and (5) whether the trial court erred by ordering payment to Goglia of a $100,000.00 bond posted during a stay of execution of the proceedings. We find no error and affirm the orders and judgment of the trial court.

## STANDARD OF REVIEW

In reviewing a trial court's decision on a motion to set aside a judgment this court must determine whether there has been a clear abuse of discretion. *Bickerstaff v. Denny's Restaurant, Inc.*, 141 Ariz. 629, 688 P.2d 637 (1984). Review is restricted to questions raised by the motion to set aside. *Hirsch v. National Van Lines, Inc.*, 136 Ariz. 304, 666 P.2d 49 (1983). Absent a clear showing of an abuse of discretion at the time of the hearing, or arbitrariness or unreasonableness, this court has held that the trial court's refusal to vacate a judgment must stand. *Industrial Park Corp. v. U.S.I.F. Palo Verde Corp.*, 19 Ariz.App. 342, 507 P.2d 681 (1973).

## MAY DR. BODNAR ASSERT MICA'S INTERESTS AS GROUNDS FOR SETTING ASIDE THE DEFAULT JUDGMENT ON APPEAL?

To obtain relief under Rule 60(c)(6), a party is required to show "extraordinary

circumstances of hardship or injustice," other than or in addition to those circumstances set out in clauses (1) through (5) of the rule. *Gorman v. City of Phoenix*, 152 Ariz. 179, 731 P.2d 74 (1987); *Davis v. Davis*, 143 Ariz. 54, 57, 691 P.2d 1082, 1085 (1985). Our supreme court has refused to set out any specific set of circumstances that would qualify as "extraordinary," "unique" or "compelling" under Rule 60(c)(6). Rather, this determination has been left to the sound discretion of the trial courts to be resolved on a case-by-case basis. *Gorman*, 152 Ariz. at 182, 731 P.2d at 77.

■ It is well established in Arizona that under Rule 60(c)(6) an insurer has standing to set aside a default judgment against its insured, not only on behalf of its insured, but on its own behalf. *E.g., Union Oil*, 131 Ariz. 285, 640 P.2d 847 (1982). The insurer's right to intervene and provide a defense for its insured is not lost where it chooses to defend under a reservation of rights. *McGough v. Insurance Co. of North America*, 143 Ariz. 26, 691 P.2d 738 (App.1984).

The rationale for permitting an insurance company to set aside a default judgment against its insured on its own behalf is to protect the insurance company from liability when it has been denied an opportunity to contest liability. *Camacho v. Gardner*, 104 Ariz. 555, 456 P.2d 925 (1969).

Dr. Bodnar contends that various cases setting forth an insurer's right to set aside a default give the *insured* the right to set aside a judgment on the insurer's behalf. We find that the cases do not stand for this broad proposition.

In *Union Oil*, the insurance company, American Home, caused an answer and a motion to set aside the default judgment to be filed on its insured's behalf. There was no claim by American Home that it would not be obligated to pay any judgment entered against the insured. In *Union Oil*, the Arizona Supreme Court stated:

In the present case, "[t]he party who is bound to pay the judgment * * * is [American Home]. In fact, if not in law, it stands in the place of [appellee], * * *

and the same equitable considerations as apply to a defaulting defendant also apply to the insurer." *Camacho v. Gardner*, 104 Ariz. at 560–61, 456 P.2d 930–31. We also stated in *Camacho* that rule 60(c)(6) "permits an even more liberal holding in a case where an insurance company—*through no fault of its own*—has not had the opportunity of defending a suit on its merits." *Id.* at 560, 456 P.2d at 930 (emphasis added). In the instant case, there is no evidence which suggests fault on the part of the insurer in failing to defend the suit on the merits other than the failure to timely appear in response to the summons. Four days after receiving notice of the default judgment, the insurer caused a motion to set aside the judgment to be filed on Hudson's behalf.

131 Ariz. at 288, 640 P.2d at 850. Both the insurer and the insured had an interest in setting aside the default.

In a minute entry dated May 8, 1986, the trial court stated, among other things: "FURTHER ORDERED denying Defendant Bodnar's Motion to Vacate Default Judgment, joined by Intervenor MICA." The court also stated:

It has concluded that Dr. Bodnar cannot succeed on the theory of *Union Oil of Calif. v. Hudson Oil Co.*, 131 Ariz. 285 [640 P.2d 847], and *Camacho v. Gardner*, 104 Ariz. 555 [456 P.2d 925] (and related cases), because MICA *denies* it is "the party who is bound to pay the Judgment," *Union Oil*, supra, 131 Ariz. at 288 [640 P.2d at 850]. It is therefore not entitled to "the same equitable considerations as apply to a defaulting defendant." *Id., Camacho*, supra, 104 Ariz. at 560–61 [456 P.2d at 930–31].

In contrast to the insurer in *Union Oil*, MICA argued below that it would not be bound if the default was not set aside. MICA and Dr. Bodnar have had separate representation throughout this litigation and acknowledge conflicting interests.

MICA did not file a motion on its own behalf to set aside the default on grounds that it failed to receive notice of the litiga-

tion and would be prejudiced thereby. It consistently asserted that it was not liable for the default judgment because of Bodnar's failure to provide notice as required under the policy. It reiterated this denial of coverage as a defense to a declaratory judgment action filed by Goglia. By joining Dr. Bodnar's motions, MICA became subject to the formal order containing Rule 54(b) findings entered on June 4, 1986 pursuant to the minute entry dated May 8, 1986. MICA has not appealed from that order and is not a party to this appeal.

Dr. Bodnar has argued that he need only be an "aggrieved party" as a result of the trial court's order to raise MICA's *Union Oil* arguments. In support of this contention, he cites numerous authorities that an appeal may be taken by any party aggrieved by the judgment. *See, e.g., Wolkin v. Civil Service Commission*, 21 Ariz.App. 341, 343, n. 1, 519 P.2d 194, 196, n. 1 (1974).

■ There is no dispute that Dr. Bodnar is an "aggrieved party" and entitled to appeal from the trial court's refusal to set aside the default judgment. However, standing to raise an appeal is not equivalent to standing to raise a particular argument on appeal. When an error applies to only one party who does not appeal, another party cannot make that argument on its own behalf. *See, e.g., Rush v. Heflin*, 411 So.2d 1295, 1297 (Ala.Civ.App.1982). *Cf. United States v. Salvucci*, 448 U.S. 83, 86–87, 100 S.Ct. 2547, 2550, 65 L.Ed.2d 619, 624–25 (1980), citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Olson*, 134 Ariz. 114, 654 P.2d 48 (App.1982).

■ The only appellant is Dr. Bodnar. There is nothing in the record to indicate that counsel for Dr. Bodnar was retained to represent MICA's interests. Under these circumstances, we find that Dr. Bodnar does not have standing to raise arguments which affect only MICA's disavowed interests.

## GOGLIA'S AMENDED COMPLAINT

Dr. Bodnar relies on a lengthy list of citations to support the proposition that Goglia's amended complaint automatically vacated the default judgment at issue. However, the cases on point involve situations in which an amended complaint sought either to increase the amount of the judgment or to change the legal theory asserted against the defaulting defendants, or both. The amended complaint in this litigation does neither.

Goglia takes the position that the amended complaint was a supplement to the original complaint by noting matters that had occurred *after* the complaint was filed; and to amend the original complaint only in the sense 'of adding new parties as a result of discovery. The new parties were CIGNA and Maricopa Orthopaedics Associates, P.C. (Maricopa), Dr. Bodnar's professional corporation. Goglia contends that although captioned "Amended Complaint" the complaint was never intended to supersede the original complaint in its entirety.

The distinction between amended and supplemental pleading is discussed in 6 C. Wright and A. Miller, Federal Practice and Procedure § 1504, at 540–41 (1971) as follows:

Amended and supplemental pleadings differ in two respects. The former relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; the latter deal with events subsequent to the pleading to be altered and merely represent additions to or continuations of the earlier pleading. Parties and courts occasionally confuse supplemental pleadings with amended pleadings and mislabelling is common. However, these misnomers are not of any significance and do not prevent the court from considering a motion to amend or supplement under the proper portion of Rule 15. Indeed, the distinction between amendments and supplemental pleadings is sometimes ignored completely inasmuch as a discretion exercised by the court in deciding whether to grant leave to amend is similar to that exercised on a motion for leave to file a supplemental pleading, the court's inattention to the formal distinction between amendment and supplementation is of no consequence.

*See also* 3 Moore's Federal Practice ¶ 15.16 (2d ed. 1985).

Throughout the amended complaint reference was made to the $702,000.00 default judgment previously entered and the amended complaint was fully consistent with the general principle that where a plaintiff's complaint is reduced to a judgment, the original claim is merged into the judgment and the judgment becomes a new obligation. *E.g., Nelson v. Nelson,* 91 Ariz. 215, 218, 370 P.2d 952, 954 (1962). The prayer of the amended complaint asked for judgment against all defendants "except as to Thomas Bodnar, M.D. for the reasons stated in paragraph eleven hereinabove." Paragraph 11 alleged the judgment against Dr. Bodnar.

█ The trial court expressly found no waiver of Dr. Bodnar's default as a result of Goglia's amended complaint. Dr. Bodnar has provided this court with no basis why certain portions of Goglia's amended complaint cannot allege events occurring prior to the filing of the original complaint in order to add new defendants and also retain a default judgment that has been entered against another defendant. There is no unfairness to Dr. Bodnar. No additional relief was sought against him. We find no error by the trial court in finding that the amended complaint was not intended to supersede that portion of the original complaint upon which the default judgment was based.

## DID GOGLIA WAIVE THE DEFAULT THROUGH DR. BODNAR'S PARTICIPATION IN DISCOVERY AND FILING ANSWERS?

Dr. Bodnar also contends that Goglia waived the default judgment by allowing Dr. Bodnar to file an answer to the amended complaint and by requiring him to participate in discovery relative to that complaint. Dr. Bodnar points out that Goglia waited more than seven months to move to strike Dr. Bodnar's answer to the amended complaint. Further, he points out that Goglia responded to interrogatories and requests for production which were served on Goglia by Dr. Bodnar. In addition, Dr.

Bodnar noticed and took several depositions at which Goglia's counsel appeared without objection. Goglia served interrogatories on "Thomas Bodnar, M.D." and not jointly with Maricopa. These interrogatories were directed to the ultimate issue of the alleged negligence, *i.e.,* the reasons for Dr. Bodnar's non-appearance at the hospital.

█ To establish waiver there must be relinquishment of a known right or conduct which would warrant inference of an intentional relinquishment. *United California Bank v. Prudential Insurance Co.,* 140 Ariz. 238, 283, 681 P.2d 390, 435 (App. 1983). A clear showing of intent to waive is required for waiver of rights. *Societe Jean Nicolas Et Fils v. Mousseux,* 123 Ariz. 59, 61, 597 P.2d 541, 543 (1979). Waiver of a right by conduct must be established by evidence of acts inconsistent with the intent to assert a right. *American Continental Life Insurance Co. v. Ranier Construction Co.,* 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980). Doubtful cases will be decided against waiver. *A.J. Bayless Markets, Inc. v. Industrial Commission,* 134 Ariz. 243, 245, 655 P.2d 363, 365 (App.1982). Whether a right has been waived is a question of fact for the trial court. *Northern Arizona Gas Service, Inc. v. Petrolane Transport, Inc.,* 145 Ariz. 467, 476, 702 P.2d 696, 705 (App. 1984). Judge Howe's finding that no waiver occurred is binding on this court unless clearly erroneous.

█ There was no stipulation by Goglia's counsel that he would permit Dr. Bodnar to file answers on his own behalf either to the original complaint or the amended complaint. Dr. Bodnar's counsel did so independently. The delay in moving to strike the answer does not in itself demonstrate acquiescence in allowing Dr. Bodnar to file a responsive pleading.

Counsel for Dr. Bodnar and Maricopa were one and the same. Maricopa was, of course, entitled to file an answer to Goglia's amended complaint and thereafter to initiate discovery. Discovery notices were sent by counsel known to be representing

both Maricopa and Dr. Bodnar. Complying with such notices does not give rise to a clear inference that Goglia acknowledged Dr. Bodnar's right to participate in discovery independent of the right of Maricopa. The transcript of Goglia's deposition does not contain any discussion acknowledging that counsel was taking that deposition on behalf of Dr. Bodnar individually in addition to Maricopa, who was represented by the same counsel.

Although Goglia's counsel addressed a set of interrogatories to Dr. Bodnar rather than to Maricopa, the interrogatories were sent to the same attorney who represented Maricopa, and the information requested was relevant to Maricopa's position in the litigation. Any interrogatory served on Maricopa would have to be answered by Dr. Bodnar. Addressing the interrogatories to Dr. Bodnar through the attorney representing both the doctor and his professional corporation is not clear evidence of an intent to waive the default judgment.

During the same period that discovery was being undertaken there were numerous proceedings concerning the default. Goglia's memorandum in opposition to the renewed motion to vacate the judgment expressly denied any waiver had occurred or was intended by participation in discovery proceedings.

We find that Judge Howe's factual finding that no waiver of the default judgment occurred through Dr. Bodnar's participation in discovery or through Goglia's delay in moving to strike the answer, is not clearly erroneous. The record contains substantial evidence that Goglia did not intend to waive the default. Further, we find that Judge Howe acted well within his discretion in striking Dr. Bodnar's answers and discovery responses when requested to do so by Goglia. *E.g., U–Totem Store v. Walker,* 142 Ariz. 549, 691 P.2d 315 (App. 1984).

## DID THE SUPERIOR COURT ABUSE ITS DISCRETION BY REFUSING TO SET ASIDE THE DEFAULT JUDGMENT PURSUANT TO RULE 60(c)(1)?

On review of the trial court's judgment refusing to set aside a default judgment, the facts involved are viewed in the strongest light in favor of supporting the trial court's decision. *Camacho v. Gardner,* 104 Ariz. 555, 559, 456 P.2d 925, 929 (1969).

Judge Scott concluded that Dr. Bodnar had made an adequate showing of a meritorious defense and had promptly applied for relief from the default judgment. These conclusions satisfy two of the requirements under Rule 60(c)(1). However, she also concluded that Dr. Bodnar had failed to establish that his acts constituted excusable neglect.

Pure carelessness is not sufficient reason to set aside a default judgment. Rather, the test of what is excusable is whether the neglect or inadvertence is such as might be the act of a reasonable person under similar circumstances. *Daou v. Harris,* 139 Ariz. 353, 359, 678 P.2d 934, 940 (1984). Trial judges are in a much better position to make this determination than appellate judges. *Id.*

Cigna advised Dr. Bodnar shortly after January 2, 1985 that he would have to handle the complaint himself. On January 11, 1985, Dr. Bodnar's personal corporate attorney specifically advised him to contact his own malpractice insurance carrier. Although Dr. Bodnar stated that he was under the impression that he was supposed to investigate the claim before he presented it to MICA, the trial judge could properly conclude that this was not the reaction of an experienced orthopedic surgeon who had previously been a defendant in a lawsuit.

Judge Scott apparently found inconsistencies in Dr. Bodnar's affidavits concerning when he thought he was served, when his answer was due, and whether he understood the need to answer within twenty days. She was unconvinced that Dr. Bodnar was justified in failing to respond in this case for over two months by any events that occurred during that time.

We find no abuse of discretion by the trial judge in concluding that Dr. Bodnar's behavior did not constitute excusable neglect. Accordingly, we find no error in the

court's refusal to set aside the default judgment.

## WAS THE PAYMENT OF A $100,000.00 BOND TO GOGLIA IMPROPER?

In addition to attempting to set aside the default judgment, Dr. Bodnar also filed a motion to stay proceedings or alternatively stay entry of judgment on March 18, 1985. This motion was argued before Judge Scott who ruled that a stay would be entered, provided that Dr. Bodnar file a $100,000.00 bond in Goglia's favor by March 21, 1985. She expressly stated that she did "not intend that this bond be a supercedeas (sic) bond as to the Judgment" and that the bond was "entered pursuant to Rule 62(b) pending the Court's ruling on Defendant's Motion to Set Aside Default Judgment."

Dr. Bodnar failed to post the $100,000.00 bond on March 21, 1985 and Goglia filed a motion to lift the stay or alternatively to increase the amount of the bond. Judge Scott extended the time for Dr. Bodnar to file the bond until March 29, 1985. This ruling was entered as a formal written order. Dr. Bodnar filed a supersedeas bond in the sum of $100,000.00 with Fidelity and Deposit Company of Maryland as surety. Following an "emergency telephonic conference" on April 1, 1985 to review the form of Dr. Bodnar's bond, Judge Scott entered a minute order and then a formal written order finding that the supersedeas bond was not in accordance with the court's order. She expressly ruled again that the bond was to provide security for plaintiff under Rule 62 and was not to be a supersedeas bond pending appeal, and ordered that a correct bond was to be posted on or before April 3, 1985. Dr. Bodnar filed a new bond in compliance with the court's order.

On June 24, 1985, Goglia filed a motion for order paying the bond and enforcing liability of the surety. Judge Howe entered a formal written order granting Goglia's motion on July 24, 1985. Fidelity thereafter voluntarily paid the judgment and a satisfaction of judgment against Fidelity and a partial satisfaction of $100,-000.00 as to Dr. Bodnar were filed on August 2, 1985.

Dr. Bodnar contends that Goglia was entitled to recover on the bond only if he could show that he suffered damages during the period that the stay of execution was in place. He argues that the bond was not intended to provide a fund from which the judgment could be satisfied.

The notice of appeal filed by Dr. Bodnar identifies the trial court's July 24, 1985 order that Goglia recover against the surety on the $100,000.00 bond. However, that order does not contain Rule 54(b) findings. It is therefore an unappealable order because this litigation has not been concluded. Only the orders relating to the denial of the motion to vacate the default have been given Rule 54(b) findings. Accordingly, we are without jurisdiction to address the merits of Dr. Bodnar's arguments concerning recovery against the bond. *See Pulaski v. Perkins*, 127 Ariz. 216, 619 P.2d 488 (App.1980).

The orders of the trial court denying Dr. Bodnar's motions to set aside the default judgment are affirmed. That portion of the appeal relative to Goglia's recovery against the surety is dismissed.

CORCORAN and EUBANK, JJ., concur.