NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

DEBORAH D. CAMPBELL BUDZISZEWSKI, *Petitioner/Appellant*,

*v.*

MITCHELL CLEMENT BUDZISZEWSKI, *Respondent/Appellee*.

KIRK JAMES CAMPBELL, et al., *Joined Parties/Appellants*.

No. 1 CA-CV 21-0540 FC
FILED 8-25-2022

Appeal from the Superior Court in Maricopa County
No. CV2019-013200
FN2018-070108
The Honorable Lisa Ann VandenBerg, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Law Office of Katherine Kraus PLLC, Peoria
By Katherine Kraus
*Counsel for Petitioner/Appellant*

Sundberg & Mousel, Phoenix
By Gary Sundberg
*Counsel for Respondent/Appellee*

Michael J. Shew LTD., Phoenix
By Michael J. Shew
*Counsel for Joined Parties/Appellants*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**F U R U Y A**, Judge:

**¶1**　　　　Deborah D. Campbell Budziszewski ("Wife") challenges the amended decree dissolving her marriage to Mitchell Clement Budziszewski ("Husband"). Joined third parties, Kirk James Campbell, Clint James Campbell, and Kelynn Campbell ("Joined Parties"), challenge the amended decree and the order declining to set aside the order joining them as parties to the dissolution action. For the reasons stated below, the property allocation in the amended decree is affirmed in part and vacated in part. We reverse the $50,000 judgment and remand for reconsideration. We affirm the order joining the third parties but vacate the portion of the amended decree affecting the Joined Parties' property rights and remand for further proceedings as to the Joined Parties.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　Preliminarily, we note that many of Wife's factual assertions are not properly supported by the record. For example, her explanation for failing to appear at the hearing is supported only by an unverified filing. On appeal, we consider only those facts properly supported by the record on appeal. *See* ARCAP 11(a).

**¶3**　　　　Husband and Wife married in 1986 and both had children from previous relationships. In August 2018, Husband began living in a care home as a result of his memory problems and need for daily assistance. The next month, Wife petitioned for dissolution and submitted a consent decree and accompanying Marital Settlement Agreement ("the Agreement"), signed by Husband and Wife. She asserted that both parties lived at the marital home on Flower Street ("the Flower Property"). The Agreement stated that Wife owned the Flower Property and Husband would sign a quit claim deed transferring ownership to Wife. The

2

Agreement awarded the Flower Property to Wife and other property in Navajo County to Husband. Under the Agreement, each party received their personal property as "mutually agreed," and Wife was awarded three Bank of America ("BOA") accounts and the only vehicle, a 2015 Nissan. Husband received one BOA account. The parties waived any interest in each other's retirement accounts and agreed Husband would pay Wife $1,000 a month to "equitably equalize" the community assets. Per the Agreement, Wife was assigned the debt from three credit cards (Citi #2339, BOA Visa #7551, Sears #4281), and the parties were both responsible for debt from a fourth credit card (Citi Visa debt (#9727)). Wife was responsible for the 2018 tax preparation costs, but she would receive 100% of any refund or pay 100% of any tax liability. On February 12, 2019, the superior court signed the consent decree, which incorporated the Agreement.

¶4            Shortly thereafter, Wife called one of Husband's adult daughters and said the daughter needed to take over his care. Wife did not mention the divorce or that Husband had been living in a care home. Once Husband's family took over his care, they learned of the divorce and the terms of the Agreement. Husband's daughter, Michelle Ehrler, acting as his guardian and conservator ("the Conservator"), moved to set aside the Agreement. The Conservator alleged that the Agreement was unfair, procured by fraud and misrepresentation, and void because Husband was incompetent when he signed it. Wife denied the allegations. At oral argument, Wife and the Conservator appeared with counsel, and Wife did not object when the Conservator waived Husband's presence. The superior court set aside the Agreement, finding that Wife failed to show how the unequal property allocation was fair and equitable.

¶5            In the meantime, the Conservator filed a civil complaint against Wife, alleging she violated the Adult Protective Services Act ("APSA"), by exploiting Husband, who was a vulnerable adult. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 46-455 and -456. Specifically, the Conservator alleged that Wife caused Husband to disclaim his interest in the Flower Property and sign the Agreement, which deprived him of his property rights. She also alleged that Wife isolated Husband from family members and spent community funds on herself and her own family and not for the benefit of the community. The Conservator moved for partial summary judgment arguing Wife exploited Husband while he was a vulnerable adult in violation of A.R.S. § 46-456. The court denied the summary judgment motion, finding a number of factual disputes, including whether Husband had diminished capacity when he signed the Agreement.

¶6             Over Wife's objection, the court granted the Conservator's motion to consolidate the APSA action with the family court proceedings. After the court set a trial date, it cautioned the parties that failure to appear at the trial or submit a joint pretrial statement may result in sanctions under Arizona Rules of Family Law Procedure ("Rule") 76.2, which "may include the Court proceeding by default based on the evidence presented by the appearing party." Wife's counsel withdrew a few months later.

¶7             Shortly after Wife's counsel withdrew, the Conservator moved for reconsideration of the summary judgment motion. The Conservator argued she did not have to show that Husband lacked capacity, as long as he was a vulnerable adult and there was no factual dispute as to that issue. Wife did not respond, and the court granted the motion. The court found that medical records from August 2017 showed that Wife and a doctor suspected Husband had dementia and Alzheimer's. Therefore, it concluded that there was no dispute Husband was a vulnerable adult and Wife "occupied a fiduciary position" to Husband when he signed the quit claim deed to the Flower Property. The court set aside the quit claim deed and found Wife violated her fiduciary duty to Husband. The issue of APSA damages was added to the upcoming evidentiary hearing in the dissolution.

¶8             The court held another status conference before the hearing, where it repeated the consequences for failing to appear or submit a pretrial statement. It stated that all exhibits submitted before trial would be summarily admitted if there was no specific objection stated in the pretrial statement. Wife did not object when the court granted the Conservator's request to waive Husband's appearance at the upcoming hearing.

¶9             Wife did not appear at the evidentiary hearing on March 16, 2021. The court found no good cause for Wife's failure to appear and proceeded by "default." The court reviewed Husband's amended pretrial statement and trial memorandum and admitted all 54 exhibits offered on Husband's behalf and ordered the Conservator to prepare a form of order.

¶10            About two weeks after the hearing, Husband moved to join Wife's adult sons and her granddaughter, alleging that Wife "fraudulently transferred community funds" to them in violation of a preliminary injunction. Although Husband served the Joined Parties, the court granted the motion before they responded, citing only Wife's failure to respond. The Joined Parties subsequently objected.

4

¶11 Over objections from Wife and the Joined Parties, the court entered the amended decree lodged by Husband. The amended decree awarded each party their separate property, and Wife was ordered to return a glider swing to Husband as his separate property by September 15, 2021 or pay $5,000. Wife was assigned the debt owed on three credit cards as of October 9, 2018—the community termination date. The court found Wife was responsible for any charges on the Citi card (#3632) she opened after October 9, 2018. Husband was assigned any tax liability for having a Citi Visa (#9727) balance written off.

¶12 For his interest in the community, the court awarded Husband a judgment of $112,789.91 and awarded seven specific items of community property to Wife. In addition to the judgment representing the property allocation, the court further entered a $50,000 judgment against Wife "for concealment of community property, for violation of the preliminary injunction[,] and for excessive and abnormal expenditures[.]" The court also ordered that Wife's interest in the present value of Husband's Tenneco pension ($13,559.14) and her survivor annuity ($18,650.60) would offset these judgments. The amended decree awarded Husband $21,688.78 in attorneys' fees and costs in addition to $1,350 in costs for calculating the present value of the Tenneco pension and annuity.

¶13 On the APSA claim, the court awarded Husband $134,000 in damages, but because a portion of these damages duplicated the property allocation, Wife was credited an amount equal to the community property judgment ($112,789.91). Wife was additionally assessed $20,000 in statutory double damages and $40,000 in punitive damages under A.R.S. §§ 46-456(B), (F), and -455(H)(4).

¶14 As to the Joined Parties, the court "declared" that any community funds transferred to them were "fraudulent conveyances[,]" and that Husband could pursue collection from the Joined Parties. But the court found the amended decree was only binding on Husband and Wife. In a separate order, the court concluded that joinder was proper but agreed that the Joined Parties had not been given sufficient notice or opportunity to participate in the proceedings until after the hearing. Nonetheless, the court found this did not warrant relief because the Joined Parties would have an opportunity to be heard before the court entered orders directly affecting them or their property. The court concluded that the amended decree involved only Wife and Husband's marital property, not the Joined Parties' separate property.

¶15        Wife and the Joined Parties timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1), (2).

## DISCUSSION

I.        **The Superior Court Did Not Err by Holding the Evidentiary Hearing in Wife's Absence Under the Circumstances Here.**

        *A.        The Rules Governing Default Proceedings Do Not Apply.*

¶16        Wife argues the superior court erred by holding the evidentiary hearing in her absence because it did not follow the proper procedure for default proceedings under Rules 44 and 44.2. However, the court entered the amended decree under Rule 76.2 as a sanction for Wife's failure to appear without good cause. Imposition of this sanction was preceded by multiple pre-hearing orders cautioning that failure to appear or file pretrial statements could result in the court proceeding by "default."

¶17        Properly characterized, the procedure employed by the court was not a "default" within the meaning of Rules 44 and 44.2. *See Gillette v. Lanier*, 2 Ariz. App. 66, 68–69 (1965) (citing *Coulas v. Smith,* 96 Ariz. 325, 328 (1964)). Rules 44 and 44.2 apply when a party does not respond. By contrast, Wife responded and had previously participated in the proceedings, but failed to appear at the evidentiary hearing or submit a pretrial statement. When a party has responded in the proceedings, the court cannot enter a judgment on default. *Id.* at 69 (citing *Coulas,* 96 Ariz. at 328). Instead, the court may proceed to hear evidence from the party who is present and render the appropriate judgment if that party has established its right to the judgment. *Id.*

¶18        Here, after repeatedly warning Wife of the consequences of failing to appear and comply with disclosure orders, the court did not err when it proceeded in Wife's absence, admitted Husband's exhibits, and entered a judgment on the merits. *See* Ariz. R. Fam. Law. P. 76.2(b)(6).

¶19        Using parallel reasoning, we further reject Wife's argument that the amended decree violated Rule 44.1(a)(1) because it awarded Husband relief that differed from her petition. Rule 44.1 does not apply here. Thus, that Rule cannot justify a finding of error as argued.

¶20        Nonetheless, evidence in the record must support the amended decree. *See Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17 (App. 2006) (noting that when no evidence in the record supports the superior court's conclusion, such deficiency constitutes abuse

of discretion). Wife contends the court could not enter a decree without taking testimony. Although no party testified, the court still received over 50 exhibits with no objection. By failing to appear at the hearing or object to the pretrial statement, Wife waived any objections to the exhibits offered at the hearing. *See State v. Briggs,* 112 Ariz. 379, 382 (1975) ("A failure to object to incompetent or inadmissible evidence constitutes a waiver to question the same matter on appeal."); *Adrian E. v. Ariz. Dep't of Econ. Sec.,* 215 Ariz. 96, 103, ¶ 24 (App. 2007) (holding failure to object to exhibits at trial waives issue on appeal). Accordingly, we review the record to determine if it supports the amended decree.

**II.     The Record Supports the Community Property Allocation, But Not the $50,000 Judgment or the $5,000 Judgment for Husband's Separate Property.**

**¶21**          Wife argues the court did not equitably divide the community property and debts and failed to assign each spouse their separate property. Dissolution proceedings are governed by statute. *In re Marriage of Waldren,* 217 Ariz. 173, 175, ¶ 8 (2007). The court is required by A.R.S. § 25-318(A) to divide community property equitably and assign each party his or her separate property. Wife's failure to appear and contest the evidence presented did not relieve the court of this duty. Accordingly, we review the amended decree to determine if it is fair and equitable as required by § 25-318(A).

**¶22**          Wife generally argues the property allocation was not fair and equitable. She specifically challenges the $5,000 judgment for Husband's swing and the $50,000 punitive judgement. However, assuming Wife's mention of "duplicative awards[,] and damages and amounts which were not well-pled" refers to the APSA damages, her assertion lacks any supporting argument or citation of authority. Accordingly, we do not consider it. *Brown v. U.S. Fid. & Guar. Co.,* 194 Ariz. 85, 93, ¶ 50 (App. 1998) (citing ARCAP former 13(a)(6), now 13(a)(7)).

**¶23**          Turning to the property allocation, we review the court's ruling for an abuse of discretion. *Bell-Kilbourn v. Bell-Kilbourn,* 216 Ariz. 521, 523, ¶ 4 (App. 2007). We will affirm the court's ruling if it is supported by reasonable evidence and view the evidence in the light most favorable to upholding that ruling. *See Vincent v. Nelson,* 238 Ariz. 150, 155, ¶ 17 (App. 2015). An abuse of discretion occurs when the record is "'devoid of competent evidence to support the decision[,]'" or when the court commits an error of law in the process of reaching a discretionary conclusion. *Hurd v. Hurd,* 223 Ariz. 48, 52, ¶ 19 (App. 2009) (quotation omitted).

¶24 Contrary to Wife's contention, the court did not rely solely on Husband's pretrial statement and trial memorandum. The court was aware of its duty to make an independent determination and findings. And according to the court, it did not view the avowals made by the Conservator's attorney as evidence; rather, it considered the exhibits, pleadings (which included Wife's deposition testimony), and Husband's pretrial statement and trial memorandum. Under Rule 76.2(b)(1), (2), and (6), the court had the discretion to consider the facts as stated in Husband's pleadings and enter a ruling on the merits in Wife's absence.

¶25 The original Agreement and Husband's pretrial statement identified several community assets and debts. The amended decree equally divided those assets by awarding Wife the community assets in her possession and ordering her to pay Husband for his share of those assets. Specifically, the court determined that Wife owed Husband $112,789.91 for his share of (1) the Flower Property; (2) the Nissan; (3) the 2018 tax refunds; (4) $3,000 representing three payments made to Wife under the Agreement; (5) the BOA checking account #5570; (6) the BOA money market account #0057; and (7) Wife's BOA retirement accounts.

¶26 The admitted exhibits show (1) the proceeds from the Flower Property totaled $172,865.10; (2) the parties received about $4,300 in tax refunds for 2018; and (3) the combined balances of all three BOA accounts (including Wife's IRA) was about $36,144 on October 9, 2018. The Nissan was owned outright, and the record shows its value ranged from $7,450 to $15,025. Wife admitted at her deposition that she paid herself $2,000 in March and April 2019 from Husband's social security and separate property retirement benefits. Thus, the record supports the finding that Husband's share of the community assets is at least $112,789.10. The court also equally divided the community's interest in Husband's Tenneco pension and survivor annuity. It was within the court's discretion to offset Wife's interest in this asset to satisfy the property allocation judgment.

¶27 The court ordered Wife to pay the debt owed on three credit cards as of October 9, 2018. The balance owed on two of the cards was approximately $4,324. Although the Sears card had a balance of nearly $200 in February 2019, the record does not show what the balance was on the date the community terminated. The court also found Wife responsible for any charges on the Visa credit card she opened after October 9, 2018. Husband was assigned any tax liability for having a Citi Visa credit card balance written off. However, there was no evidence showing how much the tax liability might be, so this is purely speculative. The court did not

explain why it was fair and equitable to order Wife to pay an additional $4,500 in community debt more than Husband.

¶28 Husband suggests the overall allocation was fair and equitable because of Wife's excessive and abnormal expenditures and her violation of the preliminary injunction. Indeed, A.R.S. § 25-318(C) allows the court to consider a spouse's excessive or abnormal expenditures, destruction, concealment, or the fraudulent disposition of community property. *See also Martin v. Martin*, 156 Ariz. 452, 455–56 (1988). Wife's use of community credit cards solely for her benefit post-petition is a valid reason to allocate the additional debt to Wife, and given the court's findings and the evidence in this record regarding Wife's conduct as outlined above, we affirm the property allocation for this reason. *See Johnson v. Elson,* 192 Ariz. 486, 489, ¶ 11 (App. 1998) (explaining an appellate court may infer additional findings of fact and conclusions of law necessary to uphold the decree if they are reasonably supported by the evidence and do not conflict with express findings).

¶29 However, beyond allocating more community debt to Wife, the court also imposed a $50,000 judgment for Wife's "concealment of community property, for violation of the preliminary injunction and for excessive and abnormal expenditures." The court imposed this sanction, in part, because Wife gave her adult sons $160,000 from the Flower Property sales proceeds and kept the 2018 tax refunds and a portion of Husband's social security and other benefits. But the court already ordered Wife to pay Husband for his share of these assets as part of the $112,789.10 judgment. *See Martin,* 156 Ariz. at 456. The court cannot impose a penalty or sanction in the form of a separate judgment beyond the property allocation because "[p]roperty may not be distributed in order to reward one party or punish the other." *Hatch v. Hatch,* 113 Ariz. 130, 133 (1976).

¶30 Nor does the fact that Wife breached her fiduciary duty to Husband, without more, support the $50,000 judgment. The court considered this particular conduct in relation to the APSA claim and damages award, which Wife has not appealed. But the court may not consider marital misconduct except for the reasons stated in A.R.S. § 25-318(C). *Id.*

¶31 The court granted Husband the $50,000 judgment because Wife allowed her adult son to live rent-free in the Flower Property for three months. There is no evidence in this record, however, of the Flower Property's fair rental value that supported a $50,000 judgment for waste of a community asset.

¶32            The court further found Wife violated the preliminary injunction by spending $9,584.59 for her granddaughter's college tuition between August 2018 and February 2019 and by keeping the 2018 tax refunds and a portion of Husband's social security and retirement benefits. The court has inherent authority and discretion to sanction a party for violating a preliminary injunction. *See* A.R.S. § 25-315(A)(5); *Green v. Lisa Frank, Inc.,* 221 Ariz. 138, 149–50, ¶ 29 (App. 2009). But the sanction is disproportionate to the violation because Wife must pay Husband his share of the same tax refunds and social security benefits in the property allocation. And to the extent the $50,000 judgment is intended as a sanction for violation of the preliminary injunction beyond the relief granted elsewhere in the court's decree—and notwithstanding the great degree of discretion afforded the court in imposing that penalty—the basis for imposition of such a substantial penalty warrants much clearer findings and explanation than what was stated. Thus, we conclude the court's proffered rationale for the $50,000 judgment is inadequate to support that sanction and otherwise inconsistent with the statutes governing dissolution proceedings and unsupported by evidence. *See Hatch,* 113 Ariz. at 133. Accordingly, we vacate the $50,000 judgment ordered in the amended decree at ¶ L and remand for reconsideration consistent with this decision.

¶33            Wife also challenges the order that she return Husband's glider swing by a certain date or pay him $5,000. The only evidence relating to this item is a photograph of a swing at a residence. At her deposition, Wife testified that the swing was Husband's separate property, but she claimed Husband gave it away because it was beyond repair. There was no evidence of the swing's value. In addition, the court had "no jurisdiction to grant a money judgment against one spouse for damage to the separate property of the other spouse in a dissolution proceeding." *Weaver v. Weaver,* 131 Ariz. 586, 587 (1982). Therefore, we vacate the order that Wife pay Husband $5,000 if she fails to return Husband's swing.

## III.    The Joined Parties Are Aggrieved But Cannot Raise Arguments on Behalf of Wife.

¶34            The Conservator argues that the Joined Parties are not aggrieved by the amended decree, and therefore lack standing to appeal the amended decree. The Conservator moved to dismiss the Joined Parties' appeal on the grounds that they were not aggrieved. Another panel of this court denied that motion, concluding that the Joined Parties were aggrieved by both the amended decree and the separate order ruling on their objection. Thus, we do not revisit that issue here.

¶35         Although the Joined Parties are aggrieved, they do not have standing to raise issues Wife did not raise herself. *In re Estate of Friedman*, 217 Ariz. 548, 552, ¶ 11 (App. 2008) (citing *Goglia v. Bodnar*, 156 Ariz. 12, 18 (App. 1987)). Thus, we do not consider the Joined Parties' arguments that the court erred by (1) setting aside the Agreement; (2) granting the motion to reconsider summary judgment; (3) failing to conduct an evidentiary hearing; (4) failing to continue the hearing; and (5) characterizing the Flower Property as community property. Like Wife, the Joined Parties argue the evidence does not support the amended decree. We have already addressed that argument, and the Joined Parties cannot make additional arguments that Wife did not raise. *Id.*

## IV.    The Joined Parties Were Denied Due Process.

¶36         The Joined Parties argue they were denied due process because the court granted Husband's motion to join them before they had an opportunity to respond and because they had no opportunity to participate in the evidentiary hearing. We agree.

¶37         Due process issues are legal issues and reviewed de novo. *Mack v. Cruikshank*, 196 Ariz. 541, 544, ¶ 6 (App. 1999). Due process requires the court "afford the parties 'an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014) (quotation omitted).

¶38         The court found the Joined Parties were not provided notice or an opportunity to participate in the evidentiary hearing. The court acknowledged that the Joined Parties should be given an opportunity to be heard before it enters an order directly affecting them or their property. But the court found no due process violation because the amended decree, specifically ¶ U, was only binding on Husband and Wife.

¶39         The court may join parties as necessary for it to exercise its authority. A.R.S. § 25-314(D). If a party in a dissolution proceeding transfers property to a third party, Rule 37(c) authorizes the court to join the transferee. And Arizona Rule of Civil Procedure ("Civil Rule") 20(a)(2) permits joinder of a party if any right to relief is asserted against them with respect to, or arising out of, the same transaction and there are common questions of fact or law. *See* Rule 33(c) (joinder motions in family court are considered under the Civil Rules). Thus, the court's joinder was not error.

¶40         Although the court properly joined the Joined Parties based on Husband's allegations that Wife transferred community funds to them, the joinder must still be consistent with due process. The issue here is the

timing of the motion and whether it deprived the Joined Parties of due process because they were denied an opportunity to appear at the hearing. Husband did not move for joinder until after the hearing, but he knew in March 2020—one year before the hearing—that Wife transferred funds to the Joined Parties. "Elementary principles of due process require that before any person may have a valid judgment entered against him, that person must have reasonable notice and an opportunity to appear and defend." *Garn v. Garn,* 155 Ariz. 156, 159 (App. 1987). Having been added after the hearing, the Joined Parties were not afforded reasonable notice or opportunity to appear and defend.

**¶41**        Husband contends the Joined Parties were not prejudiced because the decree is not binding on them and does not impact their rights until the court enters an order affecting them or their property. We disagree. The amended decree authorizes Husband to pursue collection from the Joined Parties. Nothing in the amended decree prevents Husband from immediately attempting to collect from the Joined Parties. It is, therefore, a specific order directly affecting the Joined Parties' property rights.

**¶42**        Separately, although we presume it was not the court's intent to allow such expansive application, the broad language in ¶ U of the amended decree is further problematic because it appears to authorize Husband to collect community funds transferred to the Joined Parties at any time during marriage. The amended decree declares that transfers of community property by Wife "before and after February 13, 2019" are fraudulent conveyances. As written, this language allows Husband to impermissibly collect any community funds that Wife ever gave the Joined Parties. And because Husband did not assert a claim under the Uniform Fraudulent Transfer Act, *see* A.R.S. §§ 44-1001 to –1010, we must further presume the finding that Wife made fraudulent conveyances was instead related to the waste claim under A.R.S. § 25-318(C). Having failed to plead a statutory fraudulent transfer claim, Husband cannot assert that claim against the Joined Parties in this proceeding.

**¶43**        Joinder may have been appropriate, but the amended decree did more than simply allow joinder. It authorized collection proceedings for an amount that may exceed the disputed community funds. Because the hearing resulted in a decree that affects the Joined Parties' property rights, due process required that they have an opportunity to appear *before* entry of the amended decree. *See Heinig v. Hudman*, 177 Ariz. 66, 70 (App. 1993) (holding wife's due process rights were violated when judgment against husband was converted to judgment against both husband and wife following proceeding at which wife was not a party). Although the Joined

Parties objected before the court entered the amended decree, they were deprived of any opportunity to participate in the hearing where evidence was presented to support the amended decree, or to contest which community property given to them by Wife was fraudulently transferred. This does not satisfy due process. Accordingly, we vacate ¶ U in the amended decree and remand to allow the Joined Parties to appear before entry of a judgment that affects their property rights. However, this remand is not an opportunity for the Joined Parties to raise any defenses or issues that Wife failed to assert in the prior litigation.

**V.      The Parties Agree the Correct Interest Rate Is 4.25%.**

**¶44**          The parties agree on appeal that the amended decree should be corrected to reflect a 4.25% interest rate. *See* A.R.S. § 44-1201(B) (providing that interest on judgment shall be lesser of ten percent or one percent plus the prime rate[1]).

**ATTORNEYS' FEES ON APPEAL**

**¶45**          Wife requests an award of attorneys' fees and costs on appeal under A.R.S. §§ 25-324 and 12-341. Husband requests costs on appeal from Wife under § 12-341. After considering the financial resources of the parties and the reasonableness of their positions on appeal, in the exercise of our discretion, we order Husband and Wife to pay their own attorneys' fees. However, Wife is entitled to her costs on appeal under § 12-342(A).

**¶46**          The Joined Parties request an award of attorneys' fees and costs under § 25-324. Husband seeks attorneys' fees and costs on appeal from the Joined Parties under § 25-324 and the APSA. Because Husband did not assert the APSA claims against the Joined Parties, he is not entitled to fees or costs under § 46-455(H)(4). Additionally, we lack the necessary financial information to determine if the Joined Parties or Husband are entitled to fees under § 25-324. Accordingly, each party shall pay their own attorneys' fees. Because we are remanding for reconsideration, we cannot yet determine if Husband or the Joined Parties are entitled to costs under § 12-342(A) and instruct the superior court on remand to award costs on appeal consistent with this statute.

**CONCLUSION**

**¶47**          We affirm the allocation of community property and debt in the amended decree. We vacate the $50,000 judgment against Wife and

---

[1]          Historical Prime Rate (jpmorganchase.com).

remand for reconsideration in a manner consistent with this decision. We vacate the $5,000 judgment for Husband's swing. On remand, the superior court shall modify the amended decree to reflect the correct statutory interest rate. Finally, we vacate ¶ U in the amended decree and remand for further proceedings consistent with this decision as to the Joined Parties.



AMY M. WOOD • Clerk of the Court
FILED:   AA