SCHAUER, J.
Defendant appeals from a judgment of conviction of violating paragraph 1 of subsection (e) of section- 476 of the Vehicle Code of California, which in material part reads as follows: “Whenever traffic is controlled by official traffic control signals exhibiting the words ‘Go,’ ‘Caution, ’ or ‘Stop,’ or exhibiting different colored lights successively, the following colors only shall be used, and said terms and lights shall indicate as follows:
“(e) Red alone or ‘Stop’.
“1. Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at an intersection or at such other point as may be indicated by a clearly visible line, and shall remain standing until green or ‘Go’ is showm alone. . ”
The evidence shows that defendant, on the occasion in question, was acting as a motorman operating a street ear on tracks on a public highway in the city of Los Angeles and that his car was so operated in an easterly direction on Seventh Street that it entered the intersection of Towne Avenue while a traffic signal on the southwest corner thereof showed the word “Stop”.
Defendant moved to dismiss the complaint on the ground that the law he was charged with violating was not applicable to motormen operating street cars. Subsection (e) of said section 476 expressly provides that “The motorman of any street car shall obey all official traffic signals as applicable to vehicles ...” (with an exception not material to this *Supp. 833 case). We hold that such law is applicable to motormen operating street cars and that the motion was properly denied. During the trial, however, an error o£ law occurred which entitles the defendant to a new trial.
We do not regard the provisions of paragraph 1, subsection (c), section 476, Vehicle Code (above quoted), as stating a rule absolute under all circumstances. Subsection (£) of said section, itself, provides that “No person shall disobey the directions of this section except when it is necessary for the purpose of avoiding a collision or in case of other emergency . . . ,” thereby disclosing an intent to establish a rule which could be obeyed within reason but which did not call for inexorable compliance regardless of circumstances. An emergency is not necessarily something wholly unexpected; according to Webster’s New International Dictionary (1930) it may also comprehend a pressing necessity or exigency. In 20 C. J., at p. 499, we find it defined as “Any event or occasional combination of circumstances which calls for immediate action or remedy; . . . a perplexing contingency or complication of circumstances. ” It was error, under the circumstances disclosed in the record of this case, to sustain objections to questions asked on cross-examination of the People’s principal witness and which questions bore directly on the issue as to -whether defendant’s conduct in the premises was Avillfully in violation of the law or Avas legally justified by an “emergency”, within the meaning of the statute.
We are strengthened in our construction of the “emergency” clause of the statute as being applicable here by the following considerations. AVhere official traffic signals have íavo signs only—“Stop” and “Go”—Avith no preliminary Avarnings of change, strict compliance AArith the letter of the law in every instance (disregarding the emergency clause) would be almost impossible of achievement and tona fide efforts to attain such compliance -would tend to defeat one of the principal purposes of the Ioav. Traffic signals are not installed to retard traffic—on the contrary their principal purpose, along Avith promoting safety for users of highways generally, is to expedite traffic movement. So important is the flow of traffic that Vehicle Code section 511.7 provides that “Local authorities in timing traffic signals may so regulate the timing thereof as to permit the movement of traffic in an orderly and safe manner at speeds slightly at variance from the *Supp. 834 speed otherwise applicable within the district or at intersections under this code.” A signal-marked intersection with a prima facie lawful crossing speed of 15 or perhaps 25 miles per hour, according to the district in which located, could never be approached safely at any such speed if the operator of the vehicle were under the absolute necessity, with penal sanction, of stopping, in any event whatsoever whenever the signal changed to show “Stop”, “before entering the nearest crosswalk . . . [to] remain standing until green or ‘Go’ is shown alone. ’ ’ Such an interpretation of the law would make every signal-marked intersection of every street a “boulevard stop”—every “Go” signal would be first a stop signal; the flow of traffic would be but spasmodic drippings.
Operators in attempting in good faith to comply with such an unreasonable construction of the law would be menaced by the provisions of section 514 of the same code, requiring that “No person shall drive upon a highway at such a slow speed as to impede or block the normal and reasonable movement of traffic ...”
Further provisions of said section 476 disclose legislative recognition of the fact that it would be impracticable to require a vehicle absolutely to stop under all circumstances on a change of signal. Subsection (b) of the cited section permits the use of the word ‘ ‘ Caution” and a yellow light on traffic signals and makes the following rules applicable when such yellow light or caution signal is displayed (Vehicle Code, sec. 476 [b] [1]) :
“Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at the intersection or at a marked line, but if such stop cannot be made in safety a vehicle may be driven cautiously through the intersection or past such signal.” There is no more reason for recognizing the physical fact that a moving vehicle requires time and space in which to change its inertia from motion to repose when confronted with a yellow light than there is when it faces a red light. In either case the duty to stop is imperative unless the circumstances depicted by subsection (b) (1) or by subsection (f), are present. Since in the instant case the traffic signals involved did not include the yellow or “Caution” signal the provisions of said subsection (b) (1) are inapplicable and defendant must justify his conduct, if at all, under the “emergency” clause of subsection (f).
*Supp. 835 Certainly a bona fide effort must be made, and reasonable care used, to comply with the law in every instance. But when a person operating a vehicle is approaching an intersection at a speed which is otherwise lawful under all extant circumstances (see Vehicle Code, sec. 511) and when the signal, without preliminary warning, changes from “Go” to “Stop” while the vehicle is so close to the crosswalk line that it is physically impossible to stop it before crossing that line, the operator is entitled, if charged with a violation of the law, as was the defendant here, to show the circumstances under which he proceeded, in order that it may be determined as a fact whether the “emergency” contemplated by the law existed. The objections to the three questions addressed to the witness Fujiki inquiring concerning the weather, the speed of the street car when the witness first saw it (while it was opposite the center of a safety zone) and its speed at the time the signal changed (the position of the ear at that time, according to later adduced testimony of the witness Ashworth, being approximately 10 feet west of the signal) were improperly interposed and should have been overruled.
The judgment is reversed and the cause is remanded to the municipal court for a new trial.
Shaw, P. J., concurred.