584 P.2d 1195

**Enrique C. C. SCAPPATURA, M. D., and Chest & Cardiovascular Surgery LTD., Appellants,**

v.

**BAPTIST HOSPITAL OF PHOENIX, an Arizona Non-Profit Corporation d/b/a Phoenix Baptist Hospital, PBH Corporation d/b/a Phoenix Baptist Hospital, an Arizona Non-Profit Corporation, J. Barry Johnson, Richard H. Daley, M. D., James B. Shields, M. D., and William J. Rappoport, M. D., Appellees.**

**No. 1 CA–CIV 3734.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 10, 1978.

Rehearing Denied Sept. 11, 1978.

Review Denied Oct. 5, 1978.

Ely & Bettini by Herbert L. Ely and Stephen L. Weiss, Phoenix, for appellants.

Burch, Cracchiolo, Levie, Guyer & Weyl, P. A. by K. C. Weyl and Duane A. Olson, Phoenix, for appellees J. Barry Johnson and Baptist Hospital of Phoenix.

Lewis & Roca by Roger W. Kaufman, Paul G. Ulrich, Susan M. Freeman, Phoenix, for appellees Daley, Shields and Rappoport.

## OPINION

NELSON, Judge.

Appellant Dr. Enrique Scappatura's hospital privileges were temporarily suspended, pending a full investigation, as the result of numerous complaints concerning the care of a patient of his who expired shortly after surgery. After a full hearing, appellant's privileges were reinstated with various restrictions and conditions. Appellant brought suit to recover damages for his alleged wrongful suspension from the appellees, Baptist Hospital, Barry Johnson, Doctors Daley, Shields and Rappoport. The trial court granted appellees' request for summary judgment and dismissed appellant's complaint. This appeal followed.

This Court, in reviewing the decision of the lower court granting appellees summary judgment, must resolve the following issues:

(1) Whether this Court has jurisdiction to review the internal operations of a private hospital;

(2) To what extent do the physician peer review statutes provide immunity, under A.R.S. § 36–445.02, to physicians who participate in the review and subsequent suspension of a fellow doctor; and

(3) Did the appellant make the requisite showing that the appellees acted with malice or bad faith in their suspension of him so as to preclude appellees the possibility of immunity under A.R.S. § 36–445.02.

## FACTS

On Friday, February 28, 1975, appellant performed elective major vascular surgery upon a patient in Baptist Hospital in Phoenix. The patient, who was 68 years old, had some previous conditions, chronic heart and lung disease, which made his candidacy for this surgery questionable. Prior to surgery, an EKG and angiogram indicated some abnormalities, and several days before surgery, the patient developed an upper respiratory tract infection accompanied by a fever which continued up to the morning of surgery. The operation, itself technically satisfactory, was followed by serious post-operative complications. The deterioration of the patient's post-operative condition led to emergency treatment by Dr. Scappatura. The nature of Dr. Scappatura's post-operative treatment was questioned by hospital personnel, particularly the nurses who assisted him during treatment. They felt that the measures he used during the emergency were extreme, unusual, and perhaps unsafe. The patient died during this course of post-operative treatment on the night of surgery.

The nurses who assisted Dr. Scappatura in the intensive care unit promptly informed a nursing supervisor of the concern they had about appellant's handling of this case. No action was taken on Saturday or Sunday, but on Monday morning, March 3, the nursing supervisor reported the incident to the Director of Nursing, who directed her to discuss the matter with appellee, Dr. Rappoport, the medical director of the intensive care unit. They talked late Monday or early Tuesday. A written memorandum of this incident was delivered to the Director of Nursing and Dr. Rappoport on Tuesday afternoon, March 4. Because the problem involved surgery as well as the intensive care unit, Dr. Rappoport suggested that appellee Dr. Shields, Chief of Surgery, also be given a copy. Dr. Shields received a copy of the report on Wednesday, March 5. Dr. Shields, the following morning, Thursday, March 6, conferred with appellee Dr. Daley, the Chief of Staff, and then asked the medical staff secretary to contact appellee, Mr. Johnson, the Hospital Administrator, Doctors Daley and Rappoport, and arrange for a meeting that afternoon or evening to discuss the incident. Dr. Shields called appellant and informed him about this meeting. That evening Doctors Shields, Daley, Rappoport, and Mr. Johnson discussed appellant's action in this case, interviewed the nurses, and analyzed the deceased patient's charts and records. Each of the four was informally polled regarding the proper course of action, and the recommendation to suspend appellant pending a thorough investigation was unanimous. They explicitly stated the reasons for this recommendation: (1) appellant's pre-operative evaluation of the patient, a significant surgical risk, without consultations or appropriate studies demonstrated questionable judgment; (2) appellant's post-operative care, wasting time on unnecessary procedures which possibly contributed to the patient's death and the unusual manner in which these were performed showed a lack of judgment; (3) that another patient was scheduled to undergo a similar elective major vascular surgery by appellant the very next morning, that similar errors in judgment might jeopardize that patient's safety; and (4) that their options under the hospital by-laws led them to believe that the danger to the next scheduled patient was an emergency situation calling for a summary suspension pending a full investigation. Dr. Daley, as Chief of Staff, decided that he would inform appellant of

this decision to temporarily suspend; Mr. Johnson, the Hospital Administrator, concurred.

Less than one month after his suspension, appellant was reinstated with certain restrictions and conditions, through a series of formal hearings, all of which comported with due process standards. Appellant accepted the restrictions and conditions of his reinstatement and has no complaints about these formal hearings. He complains of the initial suspension as being unwarranted, contrary to the hospital bylaws, not justifiable as an emergency situation, and as the product of malice and ill will towards him by the doctors involved.

The appellees in the lower court moved for summary judgment, asserting that appellant had no actionable claim, that the court had no jurisdiction to review the matter, and that appellant did not make a sufficient showing of malice or bad faith by appellees to avoid the bar of the immunity statute, A.R.S. § 36–445.02, to his claim. The lower court granted appellees' motion for summary judgment and dismissed the appellant's complaint.

The threshold question which must be answered is whether this Court has jurisdiction to review the internal operations of a completely private hospital. Appellee, Phoenix Baptist Hospital, was built entirely from private funds and is maintained through its services and private donations. It is a private, non-profit hospital.

■■ Generally the exclusion of a physician from staff privileges at a private hospital is a matter which will ordinarily rest within the discretion of the hospital's administrative authorities and is not subject to judicial review. *Edson v. Griffin Hospital,* 21 Conn.Sup. 55, 144 A.2d 341 (1958); *see also* cases cited in Annot., *Exclusion of or Discrimination Against Physician or Surgeon by Hospital,* 37 A.L.R.3d 645 (1971) and *Note: Judicial Review of Private Hospital Activities,* 75 Mich.L.Rev. 445 (1976). However, this general rule does not apply where, as here, there is a claim that the hospital did not conform to its own procedural requirements as delineated in its constitution, bylaws, or rules and regulations. *Peterson v. Tucson General Hospital, Inc.,* 114 Ariz. 66, 559 P.2d 186 (App.1976); *Davidson v. Youngstown Hospital Association,* 19 Ohio App.2d 246, 48 Ohio Op.2d 371, 250 N.E.2d 892 (1969); and *Silver v. Castle Memorial Hospital,* 53 Haw. 475, 497 P.2d 564 (1972). We conclude that judicial review in this case is proper. Our review, however, is limited. *Blende v. Maricopa County Medical Society,* 96 Ariz. 240, 393 P.2d 926 (1964); *Peterson v. Tucson General Hospital, Inc., supra.*

■ In determining whether or not the hospital and its governing entities acted unlawfully, arbitrarily or capriciously in the implementation of the bylaws, which actions appellant complains of, we will review both the procedural and substantive aspects that arise thereunder. *Holmes v. Hoemako Hospital,* 117 Ariz. 403, 573 P.2d 477 (1977); *Pinsker v. Pacific Coast Society of Orthodontists,* 12 Cal.3d 541, 116 Cal.Rptr. 245, 526 P.2d 253 (1974). "A rule may be arbitrary or capricious because it is itself irrational or because, in applying it to a particular situation, it is being enforced in an unfair way." *Holmes,* 117 Ariz. at 404, 573 P.2d at 478. The Arizona Supreme Court in *Holmes* reaffirmed the standard to be used in determining whether a hospital regulation was reasonable or arbitrary as being: "did it [the regulation] pertain to the 'orderly management of the hospital and in most instances . . . [was it] . . . made for the protection of patients'?" *Holmes,* 117 Ariz. at 405, 573 P.2d at 479, citing from *Findlay v. Board of Supervisors of County of Mohave,* 72 Ariz. 58, 230 P.2d 526 (1951).

■ Appellant's privileges were summarily suspended pursuant to Article III, Section E(1)(a) of the Phoenix Baptist Hospital Bylaws. That section provides in pertinent part:

"In cases of *emergency* involving danger to the health of patients or hospital personnel, a physician's membership or privileges or both may be temporarily suspended *by the chief of staff or by the*

*administrator as provided herein. . ."* (Emphasis added)

Appellant's privileges were suspended by the Chief of Staff, Dr. Daley; the hospital administrator, Mr. Johnson, concurred in the suspension. Appellant's contention that the bylaws were somehow violated by Dr. Daley in conferring with the hospital administrator, Mr. Johnson, and the heads of the Surgery Department and Intensive Care Unit, Drs. Shields and Rappoport, is untenable. Such conferring under these circumstances seems to be very reasonable and prudent. Ultimately either Dr. Daley or Mr. Johnson in their official capacities could suspend appellant's privileges; as a matter of fact, both concurred in the decision, and the fact that they received consultation from the other doctors whose hospital departments were involved in the incident is not only not a violation of the bylaws, but is commendable. Indeed, it is this very thing—consultation in peer review—that our legislature has encouraged. *See* A.R.S. § 36–445. We conclude that under Article III, Section E(1)(a) of the bylaws either Dr. Daley or Mr. Johnson had authority to suspend the appellant and that their consultation with Drs. Shields and Rappoport did not violate the bylaws.

The only other question presented in this area is whether there existed an "emergency" situation in which their authority could legitimately be exercised. Appellant contends that his suspension some six days after the incident could not under any circumstances qualify as an emergency situation. We disagree.

█ The term "emergency" has many meanings. It may be "[a]ny event or occasional combination of circumstances which calls for immediate action or remedy." *People v. Ausen,* 40 Cal.App.2d 831, 105 P.2d 321 (1940). When life and health may be in the balance, the definition of emergency should not be narrow. *Mary Day Nursery, Children's Hospital v. City of Akron,* 90 Ohio L.Abs. 457, 189 N.E.2d 745 (1961); *Miller v. County of Breckinridge,* 361 S.W.2d 283 (Ky.1962).

█ The time elapsed from the incident to the suspension was the direct result of information passing up through the chain of command, a common if not practical administrative occurrence. As soon as the information concerning this incident reached the level in which administrative action could be taken, action took place. The Chief of Staff and his consultants were aware of a patient scheduled on the next day for the same type of major vascular surgery with appellant. After reviewing the charts and records of the deceased patient and interviewing the nurses concerning post-operative care, they determined that serious errors in judgment were made and that the same type of errors in judgment could jeopardize the patient the following day. We cannot say that under these circumstances there was not an emergency situation which required prompt action.

"That such summary action must be taken promptly to be effective is underscored in the present case by the fact that the plaintiff was planning to perform another operation similar to the very operation which brought about his suspension now in issue." *Duby v. Baron,* 341 N.E.2d 870 at 874 (1976).

We determine that the bylaw before this Court is not irrational. *See Holmes v. Hoemako Hospital, supra.* It provides for the orderly management of the hospital and has the protection of the patient uppermost in mind. The bylaw, neither on its face nor in its application to appellant, is arbitrary or capricious.

█ Arizona public policy calls for the intervention by hospital and medical staffs between physicians and patients in the interests of sound patient care. If the hospital and medical staffs do not adequately review and supervise the care physicians render to patients, they may be exposed to lawsuits by the patients. *See Tucson Medical Center, Incorporated v. Misevch,* 113 Ariz. 34, 545 P.2d 958 (1976); *Purcell v. Zimbelman,* 18 Ariz.App. 75, 500 P.2d 335 (1972). A.R.S. § 36–445 mandates physician review of the professional practices of other

physicians in a hospital. Such review includes the nature, quality, and necessity of the care provided.

■ When reviewing the actions of their fellow doctors, physicians are entitled to certain protections. The Arizona legislature, to encourage full and frank discussions and decision-making, adopted A.R.S. § 36–445.02, which provides for immunity from any legal action as a consequence of assisting in the peer review process. A.R.S. § 36–445.02 states:

"A person who, in connection with a hospital's duties or functions pursuant to § 36–445, without malice and in good faith, makes a decision or recommendation as a member, agent or employee of a hospital's medical or administrative staff or of one of its review committees or related organizations, or who furnishes any records, information, or assistance to such medical staff or review committee or related organization is not subject to liability for civil damages or legal action in consequence thereof, nor shall a hospital, its administrators or its directors be liable for such activities of any such person. Nothing in this section relieves any person from liability arising from treatment of a patient."

■ Under A.R.S. § 36–445.02 any legal action against appellees is precluded unless appellant makes a showing of malice or bad faith by them in their review and suspension of him. The purpose and effect of this statute, within which malice and bad faith must be interpreted, are the encouragement of hospital peer review. The goal is the promotion of better patient care, and this statute is directed toward doing so by the exercise of peer review.

■ Review by one's peers within a hospital is not only time-consuming, unpaid work, it is also likely to generate bad feelings and result in unpopularity. If lawsuits by unhappy reviewees can easily follow any decision, even a temporary one followed by a due process hearing such as here, then the peer review demanded by A.R.S. § 36–445 will become an empty formality, if undertaken at all. Banning such lawsuits except where there is real evidence of actual malice is an integral portion of our legislature's intent.

■ The statute does not specifically define malice and bad faith. In the absence of a specific or contextual statutory definition, the general definitional section of A.R.S. § 1–215(15) applies: " 'Malice' and 'maliciously' import a wish to vex, annoy or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." We believe that "malice and bad faith" should, therefore, in this context mean *a primary purpose* other than the safeguarding of patients. *See generally Lantay v. McLean,* 2 Ariz.App. 22, 406 P.2d 224 (1965); *Edgington v. Glassmeyer,* 11 Ohio Op.2d 439, 168 N.E.2d 425 (1959).

■ In reviewing this record within the parameters of the immunity statute, we find insufficient evidence of bad faith or malice on the part of appellees to merit continuation of this action. When patient care by a physician is as unusual and potentially unsafe as these procedures were, mere allegations of malice or bad faith, even with specifications of personal animosity and possible prior overreaching of authority, will not suffice to allow an action against hospital personnel engaging in peer review.

A hospital is a place fraught with constant pressure and emergency. In such an atmosphere, personal animosity, jealousy, anger and irritation can be expected, especially when the process of peer review is involved. There must be a great deal more evidence than was presented here to overcome the clear intent of the statute to encourage good faith peer review without fear of reprisal by lawsuit.

The judgment of the trial court is affirmed.

HAIRE, P. J., and FROEB, C. J., concur.