177 P.3d 290

**In the Matter of the ESTATE OF Victor B. FRIEDMAN, deceased,**

and

**In the Matter of the Friedman Family Trust dated July 28, 1977, as amended, and the Dennis Friedman Charitable Remainder Unitrust and the Dennis Friedman Irrevocable Trust.**

**Dennis Friedman, Petitioner–Appellant,**

v.

**Jo Ann Friedman Burgess, as Trustee of the Friedman Family Trust and nominated personal representative, Respondent–Appellee.**

No. 1 CA–CV 06–0723.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 12, 2008.

**550**

Curley & Allison, LLP, By Roger D. Curley, Phoenix, Attorneys for Petitioner–Appellant.

Jaburg & Wilk, P.C. By Kathi M. Sandweiss, Lauren L. Garner, Phoenix, Co–Counsel for Respondent–Appellee.

Rosepink & Estes, P.L.L.C. By David J. Estes, Scottsdale, Co-counsel for Respondent–Appellee.

## OPINION

KESSLER, Judge.

¶ 1 Dennis Friedman ("Dennis") appeals from a probate court judgment requiring that a special administrator's fees and costs for an investigation of a claim of elder abuse and breach of fiduciary duty against the trustee/personal representative be paid from trust bequests to the beneficiaries who brought the claim. We hold that those fees and costs may have been administrative expenses to be paid by the estate rather than by the individual beneficiaries if the claims against the personal representative were not malicious, i.e., their primary purpose was to determine if there had been elder abuse. We remand this matter to the probate court to apply this test and determine whether the elder abuse claim was malicious. We also hold that Dennis does not have standing to appeal the trial court's decision concerning interest and taxes on Libby Friedman's ("Libby") bequest.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 This matter arises out of the Estate of Victor B. Friedman ("Victor"), who died in 2003 at the age of 91. Evelyn J. Friedman, Victor's wife, predeceased him in 1995. Libby is Victor's sister. Victor and Evelyn had two children, Dennis Friedman and Jo Ann Friedman Burgess ("Jo Ann"). Jo Ann is the Personal Representative of the Estate of Victor B. Friedman and the trustee of various trusts created by her father, including the Friedman Family Trust.

¶ 3 In 2003, Dennis and Libby filed a petition for formal probate and, *inter alia*, removal of the trustee. Dennis and Libby later filed an amended petition which for the first time accused Jo Ann of elder abuse in violation of Arizona Revised Statutes ("A.R.S.") section 46–456(A) and (B) (2005) [1]. A dispute then arose between the parties whether Dennis and Libby had standing to bring a claim under A.R.S. § 46–456. Based on the parties' stipulation to be bound by the findings of a special administrator, the court appointed a special administrator to investigate the claims of financial exploitation under A.R.S. § 46–456. Had Dennis and Libby's claims of elder abuse been proven, Jo Ann would have lost all benefits with respect to

---

1. We cite to the current version of the statutes if no material changes have occurred.

A.R.S. § 46–456(A) provides that "[a] person who is in a position of trust and confidence to an incapacitated or vulnerable adult shall act for the benefit of that person to the same extent as a trustee pursuant to title 14, chapter 7, article 3."

A.R.S. § 46–456(B) provides that "[a] person who is in a position of trust and confidence and who by intimidation or deception knowingly takes control, title, use or management of an incapacitated or vulnerable adult's asset or property with the intent to permanently deprive that person of the asset or property is guilty of theft as provided in § 13–1802."

her father's estate. A.R.S. § 46–456(C) (2005).

¶ 4 The special administrator filed a lengthy report finding that Jo Ann had not violated A.R.S. § 46–456. Her report states, "Ms. Burgess appears to have complied with her duties to her father as we would like all such fiduciaries to act." The report also contains the following observation:

> In my opinion, Dennis Friedman's allegations are based on his desire to find some evidence that his father did not intend to almost completely disinherit him, on [sic] his desire (or perhaps psychological or emotional need) to find some evidence that his father felt kindly towards him despite the serious disappointment Mr. Friedman felt about how his son's life turned out, and his desire to find some way to forfeit Ms. Burgess' inheritance so he can receive the trust estate. In my opinion, Libby Friedman joins these allegations because of her belief that her brother would not have favored Ms. Burgess over Dennis Friedman (despite obvious evidence to the contrary), on her closer emotional ties to her nephew and her evident disdain of her niece.

¶ 5 In its minute entry, the court recounted the special administrator's finding that there was no basis for the abuse claim and ordered that Dennis and Libby had to pay the special administrator's costs. Jo Ann then moved for sanctions under Rule 11, Arizona Rules of Civil Procedure ("Rule 11"), claiming in part that the petition alleging abuse or neglect was groundless and filed in bad faith and for harassment. In a separate minute entry, the court rejected Jo Ann's motion for Rule 11 sanctions, finding the claim had "a basis" and "was not groundless". The court stated:

> Even though the Court ultimately found that the Trustee committed no wrong-doing in this case, the Trustee's admission that she removed $38,500 from Victor's home at a time when he was physically disabled; the hiring of her husband to maintain the Friedman Trust properties;

and the Trustee receiving an interest in the Victor Friedman Partnership, provides a basis for raising the claim and an appointment of a Special Administrator to determine whether the claim had merit. Therefore, the claim was not groundless.

¶ 6 The court entered final judgment in favor of Jo Ann on Dennis and Libby's petition. The judgment provides that because Libby delayed distribution, any income tax paid by the trust on that interest would be deducted from Libby's bequest. The judgment also provides that $27,500 in costs incurred by the special administrator were payable from the trust bequests to Dennis and Libby.

¶ 7 Only Dennis filed a notice of appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(J) (2003).[2]

## ANALYSIS

### I. Interest and Taxes on Libby's Bequest

■ ¶ 8 Dennis appeals the trial court's decisions concerning interest and taxes on Libby's bequest. We do not reach the merits of this issue because Libby did not appeal and Dennis lacks standing to appeal this issue on Libby's behalf.

■ ¶ 9 An appeal may only be taken by a party aggrieved by the judgment. Ariz. R. Civ.App. P. 1; *Ellman Land Corp. v. Maricopa County,* 180 Ariz. 331, 335, 884 P.2d 217, 221 (App.1994). A party is "aggrieved" if the judgment "denies that party some personal or property right or imposes on that party some substantial burden or obligation." *Kerr v. Killian,* 197 Ariz. 213, 216, ¶ 10, 3 P.3d 1133, 1136 (App.2000) (*citing Matter of Gubser,* 126 Ariz. 303, 306, 614 P.2d 845, 848 (1980)). With limited exceptions not applicable here, see *infra,* part II discussing exceptions, "a party aggrieved by only part of a judgment can appeal only that part adversely affecting him." *Thompson v. Better–Bilt Aluminum Prods. Co.,* 187 Ariz. 121, 126, 927 P.2d 781, 786 (App.1996). The imposition of a financial burden necessary to constitute an

---

2. On May 17, 2007, the probate court entered a final order ruling that Victor Friedman lacked testamentary capacity when he executed the 1998 and 2001 amendments to the Trust Agreement. That order was appealed separately on June 15, 2007 and is pending before this Court.

"aggrievement" from the judgment "must flow directly from the judgment and not [result] merely from applying the legal principle established in [one] judgment to another proceeding." *Kerr*, 197 Ariz. at 216, ¶ 10, 3 P.3d at 1136. *See also In re Roseman's Estate*, 68 Ariz. 198, 200, 203 P.2d 867, 868 (1949)(holding that a denial of a personal or property right "must come as a direct result of the decree, and not merely as a result *in some other proceeding* of the application of a legal principle established in the decree appealed from") (emphasis added). The court in *Roseman's Estate* refused to consider the issue raised on appeal because the issue raised was actually an aggrievement resulting from a separate judgment not appealed from and because appellants had no financial interest in the underlying estate at issue. 68 Ariz. at 200–01, 203 P.2d at 868–69.

¶ 10 Dennis contends that he is aggrieved by the reduction of Libby's bequest because "[a]ny reduction in the amount of Libby's bequest reduces the amount of legal fees which may be collected from Libby and increases the amount of legal fees for which Dennis may be responsible." However, in this case, Dennis and Libby's obligation for payment of attorneys' fees does not flow from the judgment appealed from as required by Rule 1, Arizona Rules of Civil Appellate Procedure. Nor does the aggrievement flow from a separate judgment as in *Roseman's Estate*. Instead, Dennis' claimed aggrievement directly flows from an alleged financial agreement Dennis and Libby made with their attorney. Absent that agreement as to fees, the award of interest on Libby's bequest would have no effect on Dennis. The judgment appealed concerns interest on Libby's bequest and only indirectly affects Dennis as a result of the financial agreement Dennis and Libby allegedly made with their attorney. In addition, Dennis failed to point to evidence in the record of that agreement by which he purportedly assumed an obligation to pay his and Libby's joint attorney or evidence that Libby was unable to help pay the costs of the appeal.

¶ 11 "Standing to raise an appeal is not equivalent to standing to raise a particular argument on appeal." *Goglia v. Bodnar*, 156 Ariz. 12, 18, 749 P.2d 921, 927 (App.1987); *see also Kerr*, 197 Ariz. at 216, ¶ 11, 3 P.3d at 1136. Although Dennis has standing to appeal because he is aggrieved by a separate part of the judgment, see *infra* part II, he does not have standing to raise the issue of interest on Libby's bequest on her behalf. When an alleged error applies to only one party who does not appeal, another party cannot make that argument on the non-appealing party's behalf. *Goglia*, 156 Ariz. at 18, 749 P.2d at 927. Here the alleged error applies only directly to Libby, and therefore, Dennis may not challenge this portion of the judgment on her behalf. Libby, not Dennis, is the only party directly affected by the reduction of her bequest. Accordingly, we dismiss that portion of the appeal challenging the reduction of interest and taxes on Libby's bequest.

## II. Costs of the Special Administrator

¶ 12 Dennis also appeals the trial court's order requiring the costs of the special administrator to be paid out of his and Libby's bequests. Dennis argues that: (1) the allocation violates terms of the order appointing the special administrator; and (2) the probate court lacks authority to direct trust beneficiaries to pay for administration expenses.[3] Dennis relies on statutes in the probate code and provisions in Victor's will to argue that the special administrator's expenses should be paid either from estate assets or assets of the Friedman Family Trust.

## A. The Allocation Did Not Violate the Order of Appointment

¶ 13 To determine whether the order directing payment for the special administrator from Dennis and Libby's bequests violates the superior court's appointment order we must examine and interpret the court's

---

3. Dennis also argues the allocation was unfair to Libby because she would not have benefited if the special administrator found Jo Ann had violated A.R.S. § 46–456. For the reasons previ-

ously set forth with respect to the interest on Libby's bequest, Dennis is without standing to raise this issue.

appointment order. We review all matters of legal interpretation de novo. We also review questions of statutory construction de novo. *E.g., Pima County v. Pima County Law Enforcement Merit Sys. Council,* 211 Ariz. 224, 227, ¶ 13, 119 P.3d 1027, 1030 (2005) (holding that the interpretation of rules and statutes is a legal matter which matters are reviewed de novo). Therefore we review the superior court's appointment order de novo. Upon review we find no such violation because the two orders do not conflict.

¶ 14 During the hearing at which the court made its decision to appoint a special administrator, Dennis and Libby objected to the use of estate funds to pay initial fees and costs of the special administrator. The court acknowledged that opposition in its minute entry and stated,

The special administrator will have access to those funds which the decedent had access to while alive.

A ruling on final allocation of fees and costs is held in abeyance pending outcome of this litigation.

The court's formal order states, "[t]he court shall allocate the fees appropriately upon the conclusion of the special administrator's investigation or litigation resolving the dispute."

¶ 15 Dennis argues that, during Victor's life, Victor did not have access to assets belonging to Dennis or Libby and, therefore, the court's appointment order precludes the use of "their" property to pay the special administrator. Thus, he contends that the costs should have been allocated to the estate pursuant to A.R.S. § 14–3715(18) (2005). However, during Victor's lifetime, the bequests from the Friedman Family Trust did not "belong" to Dennis or Libby. During his lifetime, Victor had power to use assets of the Friedman Family Trust and to amend his trusts to add or remove trust beneficiaries. Therefore, the order permitting the special

administrator to have access to the assets of the Friedman Family Trust is valid.

¶ 16 The court's order appointing a special administrator rejects Dennis' and Libby's objections to the use of estate funds to pay the initial costs and fees and states that the final decision regarding the source of payment for these costs will await the outcome of the investigation or resolution of the litigation. The two orders do not conflict because the court's first order made a valid temporary assignment of costs and left the door open to any final award of costs.

**B. A.R.S. § 45–453(A) May Bar an Award of Costs Against Dennis and Libby**

¶ 17 Dennis also argues that there is no statutory authority for the court to order that the special administrator's costs should be paid from the bequests to him and Libby, rather than deducting them from the estate as an administrative expense prior to distribution. Dennis' argument is a matter of statutory interpretation and thus we review the issue de novo. *Dressler v. Morrison,* 212 Ariz. 279, 281, ¶ 11, 130 P.3d 978, 980 (2006).

¶ 18 Dennis correctly contends that compensation for a personal representative is defined under A.R.S. § 14–3715(18) as an administrative expense that can be paid from the estate prior to making any distributions.[4] *See In re Estate of Gordon,* 207 Ariz. 401, 405–06, ¶¶ 23–26, 87 P.3d 89, 93–94 (App. 2004) (reaffirming precedent that expenses incurred by a personal representative can be paid by the estate if the personal representative acted in good faith which is determined objectively and may include an analysis of the representative's subjective good faith and whether there was any benefit to the estate).

¶ 19 On the other hand, Jo Ann contends A.R.S. § 14–3715 authorizes the personal representative to engage in certain transactions on behalf of the estate, and that A.R.S. § 14–3720 (2005)[5] entitles the personal rep-

---

4. A.R.S. § 14–3715 provides: "Except as restricted or otherwise provided by the will or by an order in a formal proceeding and subject to the priorities stated in § 14–3902, a personal representative, acting reasonably for the benefit of the interested persons, may properly ... (18) Pay ... compensation of the personal represen-

tative and other expenses incident to the administration of the estate."

Pursuant to A.R.S. § 14–1201(48) (2005) a "personal representative" includes a special administrator.

5. A.R.S. § 14–3720 provides: "[i]f any personal representative or person nominated as personal

resentative to obtain compensation from the estate, but does not preclude payment from other sources. Jo Ann argues that, therefore, when a special administrator is appointed because of unfounded accusations which the special administrator determines are motivated by greed, the probate court may formulate equitable relief pursuant to A.R.S. §§ 14–1102 and –1103 (2005).[6] She contends that the probate court properly exercised its discretion in this case when it required Dennis and Libby to bear the costs of an investigation that found no wrongdoing.

¶ 20 We agree with Jo Ann that A.R.S. §§ 14–1102 and –1103 authorize the probate court to exercise its equitable powers to require a party to pay the costs of a personal representative or special administrator in certain circumstances. However, we must balance competing policy considerations and review our previous decisions in this area to fashion a rule that will protect the decedent's estate as well as encourage good faith inquiries into cases of elder abuse.

¶ 21 We conclude that the probate court may have erred when it required Dennis and Libby to pay the costs of the special administrator. We arrive at this conclusion after balancing the policies underlying the probate code and the Adult Protective Services Act ("APSA"), A.R.S. §§ 46–451 (2003) to –458 (Supp.2007). We hold that only when an heir who raises a claim under the APSA in a probate proceeding acts with malice, *i.e.*, that his primary purpose was other than to protect the adult or the estate, can the heir be required to pay the costs of the special administrator's investigation into a claim of elder abuse.[7]

¶ 22 In her response to the allegation of elder abuse under A.R.S. § 46–456, Jo Ann

argued that only the estate could bring a claim against her under § 46–456. Jo Ann was correct that the APSA does not authorize a cause of action by anyone other than the victim, someone legally authorized to represent the victim or a public official. A.R.S. §§ 46–455(B) and (E) (Supp.2007); *In re Guardianship/Conservatorship of Denton*, 190 Ariz. 152, 153–56, 945 P.2d 1283, 1284–87 (1997). Rather, the APSA creates a scheme whereby another person suspicious of elder abuse shall or may report that suspicion to a state-appointed agency, peace officer or ombudsman. A.R.S. § 46–454(A), (B) and (D) (Supp.2007).

¶ 23 To resolve this standing problem and pursuant to its equitable powers, the court appointed a special administrator to investigate Dennis and Libby's claims. Ultimately, the special administrator found that there was no basis for a claim against Jo Ann under § 46–456. The court restated that finding in dismissing Dennis and Libby's petition. The probate court also determined that, because the claim of elder abuse was unfounded, Dennis and Libby should be required to pay the costs of the special administrator.

¶ 24 Arizona's probate code must be construed to promote its underlying purposes and policies. A.R.S. § 14–1102(A). Those purposes include carrying out the intent of a decedent, promoting a speedy and efficient system for liquidating an estate and making distributions, and facilitating the use and enforcement of trusts. A.R.S. § 14–1102(B). The code also provides that, "[u]nless displaced by the particular provisions of this title, the principles of law and equity supplement its provisions." A.R.S. 14–1103. With the probate court's power to apply the principles of law and equity in mind, we examine

---

representative defends or prosecutes any proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred."

6. A.R.S. § 14–1102(A) and (B) provide, in pertinent part, that "[t]his title shall be liberally construed and applied to promote its underlying purposes and policies. (B) The underlying purposes and policies of this title are: 1. To simplify and clarify the law concerning the affairs of decedents.... 3. To promote a speedy and effi-

cient system for liquidating the estate of the decedent and making distribution to his successors."

A.R.S. § 14–1103 provides that "[u]nless displaced by the particular provisions of this title, the principles of law and equity supplement its provisions."

7. Our ruling does not affect the court's power to impose sanctions under Rule 11, A.R.S. §§ 12–341.01(C), 12–349, and 12–350 (2003).

the reasons behind the APSA and especially the immunity offered persons who make allegations of elder abuse pursuant to A.R.S. § 46–453(A) (2005).

¶ 25 In 1988, the legislature perceived elder abuse as a serious problem and enacted A.R.S. § 46–455, which designated elder abuse as a class one misdemeanor. 1988 Ariz. Sess. Laws, ch. 85, § 2 (2nd Reg.Sess.). The following year the legislature expanded the statute to create a civil cause of action for elder abuse. 1989 Ariz. Sess. Laws, ch. 118, § 1 (1st Reg.Sess.). In 1996, the legislature enacted A.R.S. § 46–456, setting forth duties owed to an incapacitated or vulnerable adult and providing for civil and criminal penalties for breach of those duties. 1996 Ariz. Sess. Laws, ch. 274, § 1 (2nd Reg.Sess.). Civil penalties include forfeiture of all benefits with respect to the estate of the incapacitated or vulnerable adult. A.R.S. § 46–456(D) (2005). In addition, as part of the APSA, the legislature provided that some persons are required and others are authorized to report cases of alleged adult abuse or neglect to peace officers or adult protective services workers. A.R.S. §§ 46–454(A), (B) and (D) (Supp.2007). To encourage such reporting, the legislature provided:

> [a]ny person making a complaint, furnishing a report, information or records required or authorized by this chapter or otherwise participating in the program authorized by this chapter or in a judicial or administration proceeding or investigation resulting from reports, information or records submitted or obtained *pursuant to this chapter is immune from any civil or criminal liability by reason of such action, unless the person acted with malice.*

A.R.S. § 46–453(A) (emphasis added).

¶ 26 Court decisions construing the APSA emphasize the legislative concern with deterring elder abuse and providing broad remedies to the victims of such abuse. *See In re Estate of Winn,* 214 Ariz. 149, 152, ¶¶ 13–15, 150 P.3d 236, 239 (2007) (holding that the APSA is to be interpreted broadly to effectuate its remedial purpose and a late-appointed personal representative can pursue an elder abuse claim on behalf of the estate in spite of limitations placed on personal representative

in the probate code); *Estate of McGill v. Albrecht,* 203 Ariz. 525, 530–31, ¶¶ 19, 21, 57 P.3d 384, 387, 389–90 (2002) (holding that the legislature intended to provide elderly population greater protection than already provided under other civil remedies, and APSA claims and medical malpractice claims are not mutually exclusive); *Denton,* 190 Ariz. at 155–56, 945 P.2d at 1286–87 (holding representative of victim of elder abuse may recover damages for victim's pain and suffering notwithstanding death of victim); *Davis v. Zlatos,* 211 Ariz. 519, 527, ¶ 32, 123 P.3d 1156, 1164 (App.2005) (caretaker of vulnerable adult violates the APSA by failing to act for the vulnerable adult's benefit to the same extent as a trustee).

¶ 27 This Court must balance Arizona's strong policy to protect the elderly from abuse against both the probate code's goal for efficient administration of estates and the potential misuse of the APSA to obtain personal gain, such as efforts to prevent a blameless beneficiary from taking under the estate of a vulnerable adult. If there are grounds for suspecting elder abuse, the remedial policy underlying the APSA is to encourage an inquiry into that claim and provide immunity from any civil liability unless the reporting was done with malice.

¶ 28 APSA immunity may not expressly apply to a claim of abuse raised in this context, because the complaint here was not part of a formal report under A.R.S. § 46–454. We conclude, however, that A.R.S. § 46–453(A) provides the appropriate balance to use between administration and distribution of estates under the probate code and the APSA. This is because it provides immunity for persons reporting alleged abuse or neglect of vulnerable adults unless they acted with malice. Such a balance encourages potential APSA claimants to bring only good faith claims. Any other test could discourage reasonable elder abuse claims, in conflict not only with the APSA but with one of the stated purposes of the probate code, to carry out the intent of the testator. Indeed, investigation of possible elder abuse or neglect claims is in the interest of the testator who we presume intends not to be abused or have his estate affected by such abuse.

¶ 29 This conclusion does not end our inquiry. To determine whether the probate court erred in ordering Dennis and Libby to pay the special administrator's fees and costs, we must determine what constitutes "malice" for purposes of A.R.S. § 46–453(A) immunity. To do so, we turn to a similar statute which formerly governed claims dealing with hospital peer review, A.R.S. § 36–445.02 (1976) and *Scappatura v. Baptist Hosp. of Phoenix,* 120 Ariz. 204, 584 P.2d 1195 (App.1978). Prior to 1984, A.R.S. § 36–445.02 provided that "[a] person who without malice and in good faith . . . furnishes any records, information or assistance to [a hospital peer review committee] . . . is not subject to liability for civil damages or any legal action in consequence thereof." Historical and Statutory Notes to A.R.S. § 36–445.02 in 11A Arizona Revised Statutes at 239 (2003).[8] In *Scappatura,* citing A.R.S. § 1–215(15) (1972)[9], we held that "malice" and "bad faith" import "a wish to vex, annoy or injure another" and "mean [a] *primary purpose* other than the safeguarding of patients." 120 Ariz. at 210, 584 P.2d at 1201 (emphasis added). As we reasoned, such immunity would help to preclude lawsuits by unhappy physicians unless there was real evidence of actual malice, thus serving the legislative intent to promote better patient care. *Id.*

¶ 30 This same reasoning applies here. The legislative intent underlying APSA is to protect vulnerable adults from neglect and abuse by encouraging reporting of alleged abuse. Preventing liability for reporting alleged abuse unless there is malice by the person making the report serves that legislative purpose.[10] Interpreting "malice" to mean "a primary purpose other than the safeguarding" of vulnerable adults from abuse serves that purpose while also preventing inefficient administration of estates under the probate code. Accordingly, a probate court can order a person to pay for a special administrator's fees and costs in investigating alleged abuse or neglect of a vulnerable adult if it finds that the claimant's primary purpose in making the claim was other than for protection of the alleged victim and his estate.

■ ¶ 31 In this case, the special administrator found that the allegations against Jo Ann were without merit and at least in part were motivated by Libby's dislike of Jo Ann. The probate court recounted the special administrator's determination that the claim was unfounded and awarded the administrator's costs against Dennis and Libby. However, in a separate minute entry rejecting Jo Ann's motion for sanctions against Dennis and Libby under Rule 11, the court found that the claim had "a basis" and "was not groundless."

¶ 32 Given this record and that the probate court did not have our test for an award of the special administrator's fees and costs for an APSA claim available to it, we remand this matter for the court to apply this test. In so doing, we recognize the court recounted the special administrator's findings and found that there was no basis for the APSA claim. However, the court also denied Jo Ann's motion for sanctions under Rule 11, Arizona Rules of Civil Procedure ("Rule 11"), in which Jo Ann asserted that the APSA claim was both groundless and was filed for an improper purpose. The court denied that motion, holding that several facts provided "a basis for raising the claim and an appointment of a Special Administrator to determine

---

8. In 1984, the legislature amended the statute to provide absolute immunity for providing information to such committees. *See Goodman v. Samaritan Health Sys.,* 195 Ariz. 502, 507, ¶ 20, 990 P.2d 1061, 1066 (App.1999).

9. Renumbered (20) this subsection of the statute entitled "Definitions", now reads: "[i]n the statutes and laws of this state, unless the context otherwise requires: . . . 'malice' and 'maliciously'. . . import a wish to vex, annoy or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law. A.R.S. § 1–215(20) (2007).

10. We recognize that the immunity from liability posited in section 46–453(A) could be limited to liability from damages in an action brought by the person accused of elder abuse or neglect and not to liability for a special administrator's fees and costs in a probate action. Given the broad purpose of APSA to protect elders from abuse and neglect and the deterrent effect of an award of such fees and expenses against the person making the accusation, we interpret "liability" sufficiently broadly to include liability for such expenses.

whether the claim had merit. Therefore, the case was not groundless." The court did not address the improper purpose prong of the Rule 11 motion.[11] Given that Rule 11 holding in contrast to the earlier findings of the special administrator concerning Dennis' and Libby's purpose and the court's award of the special administrator's fees and costs against them, we cannot determine whether the court effectively held that the malice requirement we set out today was met. *Cf. Tabrizi v. Village of Glen Ellyn*, 684 F.Supp. 207, 209 (N.D.Ill.1988) (Rule 11 authorizes "sanctions based either on a subjective or an objective standard. Under the subjective standard, a court may sanction a plaintiff who brings a suit *primarily* to harass or impose expenses on the defendant.") (Emphasis supplied.). Accordingly, we remand this matter to the probate court to determine whether Dennis and Libby acted maliciously, i.e., with a primary purpose other than to protect a vulnerable adult and his interests in the estate, in bringing the APSA claim.

### D. Both Dennis and Libby Are Entitled to Relief for Costs

¶ 33 Jo Ann argues that because Libby did not join in Dennis' appeal we cannot overturn the court's award of costs against Libby. We disagree. "[T]he general rule [is] that, in the absence of any statutory provision permitting appeals by one party, all parties to the action having a direct interest in the litigation, against whom a joint judgment is entered, must join in the appeal." *Hurst v. Lakin*, 13 Ariz. 328, 329, 114 P. 950, 951 (1911). It is also true as discussed in part I of our analysis above, that when an error applies to only one party who does not appeal, another party cannot raise that issue on behalf of the non-appealing party.

¶ 34 However, there are exceptions to these general principles. The court in Hurst stated the general rule but also recognized an exception to the general rule for sureties

on a bond who are liable to the principal only on the underlying contract. While this exception for sureties does not apply in the present case, various jurisdictions outside of Arizona recognize an additional exception to the general rule when justice so requires. We hold that this exception to the general rule is required to do justice in this case and we apply the exception as laid out by other states.

¶ 35 In *Estate of McDill*, the California Supreme Court declared that "[a]s a general rule, where only one of several parties appeals from a judgment, the appeal includes only that portion of the judgment adverse to the appealing party's interest, and the judgment is considered final as to the non-appealing parties." 14 Cal.3d 831, 122 Cal.Rptr. 754, 537 P.2d 874, 879 (1975) (Internal citation omitted). However, the court further explained:

> [w]here the part (of a judgment) appealed from is so interwoven and connected with the remainder, ... that the appeal from a part of it ... involves a consideration of the whole, ... if a reversal is ordered it should extend to the entire judgment. The appellate court, in such cases, must have power to do that which justice requires, and may extend its reversal as far as may be deemed necessary to a[sic] accomplish that end.

*Id.*

¶ 36 *Estate of McDill* resolved a petition relating to an estate. The probate court awarded one-half of the estate to the cousins of the decedent's predeceased spouse and one-half to decedent's two nieces. Only one of the two inheriting nieces appealed the award. The Supreme Court concluded that the cousins had no statutory right to inherit. The court, rather than reversing the award only as to the appealing niece, applied the exception to the general rule and reversed the award as to the non-appealing niece as well so as to prevent a windfall to the cousins

---

11. Rule 11 permits an award of sanctions if a pleading "was not well grounded in fact" or was "interposed for *any* improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 11. (Emphasis supplied.). *See also Boone v.Super. Ct.*, 145 Ariz. 235, 241–42, 700 P.2d 1335, 1341–

42 (1985) (An attorney violates Rule 11 when a pleading is filed that he or she "knew, or should have known by such investigation of fact and law as was reasonable and feasible ... that the claim or defense was insubstantial, groundless, frivolous, or otherwise unjustified" or was filed to harass, coerce, extort or delay.).

who had no statutory right to inherit. *Id.* at 875, 879–80. *See also In re Estate of Duran,* 141 N.M. 793, 161 P.3d 290, 297 (App.2007) (citing to *McDill* and applying the exception to affirm the trial court's declaration of co-tenancy as to five co-tenants, even though only two co-tenants appealed). In *Estate of Duran,* the New Mexico court collected cases from three other jurisdictions which recognize the exception available when justice so requires:

> *Kuhn v. Kuhn,* 301 N.W.2d 148, 151–52 (N.D.1981) (recognizing that there is an exception to the rule that a non appealing party is bound by the decision of the lower court); *Shelter Mut. Ins. Co. v. Briggs,* 793 S.W.2d 862, 864 (Mo.1990) (en banc) (stating that when the interests of the non appealing party are so commingled with those of the appealing parties as to be inseparable, an appellate court may reverse the lower court's decision as to the non appealing party); *Gino's Pizza of E. Hartford, Inc. v. Kaplan,* 193 Conn. 135, 475 A.2d 305, 309 (1984) (allowing a third-party defendant to assert on appeal claims of error in the main case even though the defendant/third-party plaintiff did not appeal from that judgment).

161 P.3d at 297.

¶ 37 In the present case, our reversal of the portion of the judgment requiring Dennis to pay the special administrator's costs is entirely interwoven with the requirement that Libby also pay these costs. Libby and Dennis are in an identical position with respect to this issue of costs, and consideration of Dennis' burden to pay the costs is consideration of Libby's identical burden to do the same. It would not be just to reverse the award as to Dennis but not Libby, which would unfairly require Libby to possibly bear the entire expense of the special administrator.

¶ 38 We have outlined a new test for the award of costs in probate under the elder abuse statute, which the trial court did not have the benefit to consider when it ordered Libby and Dennis to pay the special administrator's costs. Therefore, justice requires that we reverse the award of costs as it unduly imposes a burden on both Dennis and Libby and remand for the court to determine their potential liability.

## III. Attorneys' Fees on Appeal

¶ 39 Both parties request an award of attorneys' fees on appeal. Jo Ann's request for attorneys' fees is based on A.R.S. §§ 46–455(H) (Supp.2007) and 14–1102 and –1103. Section 46–455(H) permits an award of fees under the APSA after a determination of liability. There is no determination of liability under the APSA at this point. On remand, if the probate court determines that Dennis and/or Libby are not entitled to immunity under section 36–453(A), it may award Jo Ann her reasonable attorneys' fees on appeal.

¶ 40 Dennis' request for an award of fees is based on his claim that he was acting as the special administrator in asking the court to have the estate pay for those costs and fees. He contends such an award is appropriate under A.R.S. § 14–3720. We disagree. Dennis' appeal was taken for his own benefit, not for the benefit of the estate. Accordingly, we will not award him his fees under A.R.S. § 14–3720. *See In re Wright's Estate,* 132 Ariz. 555, 559, 647 P.2d 1153, 1157 (App.1982) (ruling that the court will not award fees from an estate for services performed by an attorney not employed by the personal representative for services rendered to benefit an individual or group of individuals interested in the estate) (*quoting In re Balke's Estate,* 68 Ariz. 373, 379, 206 P.2d 732 (1949)), *disapproved of on other grounds by Marvin Johnson, P.C. v. Myers,* 907 P.2d 67, 70, 184 Ariz. 98, 101 (1995).

## CONCLUSION

¶ 41 For the reasons stated above, we dismiss portions of the appeal as to Libby's obligation to pay the interest and taxes on her bequest. We reverse the portion of the probate court's order directing the costs of the special administrator to be paid from Dennis and Libby's bequests and remand for further proceedings consistent with this opinion. Finally, we determine that neither party is the prevailing party on appeal for

purposes of costs on appeal and deny both parties such costs.

CONCURRING: MICHAEL J. BROWN, Presiding Judge and LAWRENCE F. WINTHROP, Judge.

